[L. A. No. 28479. In Bank. Sept. 13, 1967.]

FAYE DRISCOLL et al., Plaintiffs and Appellants, v. CITY
OF LOS ANGELES et al., Defendants and Appellants.

Kenneth Sperry and John L. Kaesman for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Weldon L. Weber and John J. Tully, Jr., Assistant City Attorneys, for Defendants and Appellants.

Stanley T. Tomlinson, City Attorney (Santa Barbara), J. F. Goux and Kenneth R. Nuss as Amici Curiae on behalf of Defendants and Appellants.

SULLIVAN, J.—We are called upon to review a declaratory judgment determining the past and future pension rights of certain widows of retired former members of the Los Angeles Police and Fire Departments. Plaintiff widows, except plaintiff Gussie A. Hand, appeal from adverse portions of the judgment which limit the recovery of each of them to unpaid pension benefits accruing within six months prior to the filing of a formal claim therefor and which deny to each of them recovery of other unpaid pension benefits accruing from and after the death of the respective deceased husband of each but prior to said six-month period. Plaintiff Hand appeals from the entire judgment which denies her all recovery. Defendants[1] (hereafter for convenience referred to collectively as the ''City'') appeal from the entire judgment. We have concluded that the judgment should be affirmed insofar as, and to the extent that, it provides recovery to plaintiffs Driscoll, Beard and Powell; that it should be reversed insofar as it provides any recovery for plaintiffs Slaten and Galbreth (La Niece); and that it should be reversed insofar as it denied recovery to plaintiff Hand.

Each plaintiff is the widow of a former member of either the police or fire department who had performed services for the City prior to July 1, 1925. The deceased husband of each plaintiff had been regularly retired from service and had been paid a pension by the City up to the time of his death. Each plaintiff had been married to her husband for at least one year prior to the date of his death but none of said plaintiffs had been married to her husband for at least one year prior to the date of his retirement.

---

[1]Defendants are: City of Los Angeles, a municipal corporation; Board of Pension Commissioners of the City of Los Angeles; and Leo J. Adelstein, M.D., John W. Givens, Arthur C. Eldred, Harold E. Levitt, and Vincent M. Burke, as members thereof. Plaintiff Della A. La Niece died after the commencement of this action and R. Morgan Galbreth, executor of her will, has been substituted herein for her. For convenience we will refer to ''plaintiff La Niece'' and any such reference should be construed, where appropriate, as a reference to her executor.

Prior to July 1, 1925, the City's charter provided for the payment of a *fluctuating* death benefit pension[2] as distinguished from a *fixed* pension to the widow of a deceased pensioner provided only that she was married to him for at least one year prior to his *death*. Before the above date, section 4 of article XI½ of the 1889 charter provided "that no widow of a pensioner shall be entitled to a pension unless she shall have been married to such deceased pensioner at least one year prior to the date of his *death*." (Italics added; Stats. 1923, pp. 1411-1414.) Effective July 1, 1925, this provision was amended by the enactment of section 183 of article XVII of the 1925 charter to provide "that no widow of a pensioner shall be entitled to a pension unless she shall have been married to such pensioner at least one year prior to the date of his *retirement*." (Italics added; Stats. 1925, pp. 1085-1088.) Pursuant to amendments to the city's charter in 1925 (Stats. 1925, p. 1085) and 1927 (Stats. 1927, pp. 2023-2024) *fixed* pensions were substituted for *fluctuating* pensions; the 1927 amendment effectuated this change for widows' pensions.

The present action was commenced in 1960 to obtain a fluctuating monthly death benefit pension payable to each plaintiff from the date of death of her respective husband throughout the remainder of her natural life, or until her remarriage, in accordance with the City's charter provisions in effect prior to July 1, 1925. The theory of the action was that each plaintiff was eligible for the pension under the old charter because she had been married to the deceased pensioner for at least one year prior to his *death* even though she had not been married to him for at least one year prior to his *retirement* as required by the new charter.

It is noteworthy, therefore, that the action was brought after our decision in *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438 [326 P.2d 484] wherein we held, *inter alia*, that the 1927 amendment to the city's charter changing widows' pensions from a fluctuating to a fixed basis could not validly be applied to widows whose husbands had retired prior to the effective date of such amendment and that such widows were entitled to fluctuating pensions. (50 Cal.2d at pp. 454-455.) Subsequent to the commencement of the instant action the

---

[2] A fluctuating death benefit pension is in an amount equal to 50 percent of the salary attached to the rank held by such deceased husband one year prior to his retirement. It is based upon salaries currently being paid and is therefore subject to increases in amount whereas a fixed pension is based on salaries received prior to retirement.

Court of Appeal rendered its decisions in *Henry* v. *City of Los Angeles* (1962) 201 Cal.App.2d 299 [20 Cal.Rptr. 440] and *Atwell* v. *City of Los Angeles* (1962) 201 Cal.App.2d 336 [20 Cal.Rptr. 462] wherein it determined, *inter alia*, that the 1925 amendment to the city's charter was and is unconstitutional as applied to a widow of a deceased pensioner appointed to his position prior to the amendment and that such a widow was legally entitled to receive a death benefit pension upon the death of her pensioner husband provided she was married to him for at least one year prior to his *death*.[3]

After the last two decisions, the City conceded in the court below that the 1925 amendments to the charter were and are unconstitutional as applied to these plaintiffs and that plaintiffs were eligible for death benefit pensions having met the requirement under the old charter of having been married to the deceased pensioner for at least one year prior to his death. Nevertheless the City contended below (1) that the cause of action of each plaintiff except Mrs. Hand was barred by Code of Civil Procedure sections 312 and 338, subdivision 1, for the reason that the action was not commenced until more than three years after the demise of her respective husband; and (2) that the right of each plaintiff to recover any unpaid pension benefits accruing more than six months prior to the date upon which each plaintiff filed her respective written claim therefor with the City was barred by sections 363 and 376 of the City's charter. Plaintiffs on their part contended that none of their causes of action were barred by the provisions of any statute and that the City was estopped from relying upon either the statute of limitations or the aforementioned claims provisions of the City's charter. The trial court held that as to each plaintiff except Mrs. Hand the City was estopped to assert the statute of limitations but not the claims provisions, and that as to plaintiff Mrs. Hand the City was not estopped to assert the statute of limitations "for the reason that her claim was denied by the defendant board on February 19, 1964, 'upon the advice of the City Attorney.'"

The trial court found so far as is here pertinent that shortly after the demise of her husband each plaintiff, other

---

[3]While *Abbott, supra,* determined that the 1927 charter amendments changing the widows' pensions from a fluctuating to a fixed basis did not apply to widows whose husbands retired before the effective date of the amendment, it did not determine the effect of the 1925 amendment requiring that the widow shall have been married to the deceased pensioner for at least one year prior to his *retirement* in order to qualify for a widow's death benefit pension.

than plaintiffs La Niece and Slaten, made inquiries of employees of defendant Board of Pension Commissioners concerning her right to receive a pension; that each such plaintiff was advised that she was not eligible to receive a pension of any kind for the reason that she had not been married to her husband for at least one year prior to his retirement; that each such plaintiff to whom said statement was made believed it and did not file any claim or take any further steps to assert her rights at that time; that the City's employees believed, prior to the decision in *Henry, supra,* that plaintiffs were not entitled to a widow's pension for the reasons stated; that in so advising plaintiffs the employees had acted in good faith; that thereafter each plaintiff, shortly prior to filing her instant claim, was independently advised that because of recent appellate court decisions she might now be eligible to receive her pension; that the instant claims were then filed and diligently pursued; that the claims were rejected by the City upon the ground that plaintiffs, other than plaintiff Hand, had not been married to a retired employee for at least one year prior to his retirement and that as stated above in the case of plaintiff Hand the claim was rejected " 'upon the advice of the City Attorney.' "

The record supports the foregoing findings as to plaintiffs other than La Niece and Slaten. The former, having died before this action came to trial, did not testify and there is no evidence of record as to representations made to her following her husband's death. Plaintiff Slaten appeared as a witness but testified only that, although she had gone to the office of the board shortly after the death of her husband in 1947, she was unable to recall what had transpired at that meeting. Counsel for plaintiffs attempted on numerous occasions to introduce in evidence testimony that it was the custom of the board to contact widows of all pensioners shortly after the deaths of their respective husbands in order to advise them of their pension rights and that it was the custom and practice of the board at the time of the deaths of the husbands of plaintiffs Slaten and La Niece to advise persons situated the same as those plaintiffs that they were not entitled to a pension. The trial court sustained objections to each inquiry or offer of proof until, finally, the city attorney withdrew his objection and the witness, an employee of the board, was permitted to testify that it was the custom of the board, prior to the decision in *Atwell (Atwell v. City of*

*Los Angeles, supra,* 201 Cal.App.2d 336),[4] to deny applications of widows situated as in the case of the instant plaintiffs.[5] The testimony, however, did not relate to the board's practice with respect to *advising* widows[6] and counsel did not pursue the matter further.

It is manifest that the scant evidence in the record bearing upon advice by the City to plaintiffs Slaten and La Niece concerning their eligibility for a pension justifies the trial court's finding that no representations were made to these plaintiffs. We consider *infra* the propriety of resting on such evidentiary basis a finding of estoppel favorable to the above two plaintiffs.

▮▮ The record clearly discloses that plaintiffs did not file their written claims with the City and did not commence the present action until more than three years after the deaths of their respective husbands. The applicable statute of limitations provides that an "action upon a liability created by statute . . ." must be commenced within three years (Code Civ. Proc., § 338, subd. 1) "after the cause of action shall have accrued." (Code Civ. Proc., § 312.) ▮▮ A cause of action to establish the right of a widow to a pension accrues at the time of her husband's death. (*Dillon* v. *Board of Pension Comrs.* (1941) 18 Cal.2d 427, 430 [116 P.2d 37, 136 A.L.R. 800].) It is clear that the present action is barred by the above code section.[7]

Accordingly we must decide the following questions which are raised by the several appeals: Did the trial court correctly determine that the City was estopped to assert the statute of

[4]The decision in *Atwell* followed on the same day as the decision in *Henry*, March 14, 1962, as did a decision on a related matter in *Eaton* v. *City of Los Angeles* (1962) 201 Cal.App.2d 326 [20 Cal.Rptr. 456], all from the same district and division of the Court of Appeal.

[5]The matter is reported in the transcript, as follows:

"Q. BY MR. SPERRY [Counsel for plaintiffs]: Isn't it a fact, Mrs. Woodruff, that all applications for pensions by widows who had not been married prior to, at least, one year prior to retirement, were customarily denied by the Board at all times, prior to the decision of the District Court of Appeal in the case of Atwell vs. The City of Los Angeles?

"MR. TULLY [Attorney for the City]: I will withdraw my objection.

"A. That is true."

[6]In *Casey* v. *City of Los Angeles* (1966) 243 Cal.App.2d 789 [52 Cal. Rptr. 753], considerable evidence of this practice or custom was introduced and relied upon by the court in affirming a judgment for plaintiff widows.

[7]This conclusion is reached even if the statutory period be considered tolled during the period of the City's deliberations on the claims, that is from the time each claim respectively was filed until the time it was rejected. (See *Dillon* v. *Board of Pension Comrs., supra,* 18 Cal.2d at pp. 430-431.)

limitations against all plaintiffs except Mrs. Hand? Did the court err in including plaintiffs La Niece and Slaten within such determination despite the different facts and circumstances pertaining to these two plaintiffs bearing on the issue of estoppel? Did the court err in determining that the City was not estopped to assert the statute against Mrs. Hand and that as a consequence she should be denied all recovery? Finally, did the court err in determining that the City was not estopped to assert the claims provision of the City charter[8] so that in any event recovery must be limited to those unpaid pension benefits accruing *not* more than six months prior to the date of filing a claim?

Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. (*California Cigarette Concessions, Inc.* v. *City of Los Angeles* (1960) 53 Cal.2d 865, 869-870 [3 Cal.Rptr. 675, 350 P.2d 715]; *Lusitanian-American Dev. Co.* v. *Seaboard Dairy Credit Corp.* (1934) 1 Cal.2d 121, 128 [34 P.2d 139]; *Safway Steel Products, Inc.* v. *Lefever* (1953) 117 Cal.App.2d 489, 491 [256 P.2d 32]; *Transport Clearings-Bay Area* v. *Simmonds* (1964) 226 Cal.App.2d 405, 427 [38 Cal. Rptr. 116].) The existence of an estoppel is generally a question of fact for the trial court whose determination is conclusive on appeal unless the opposite conclusion is the only one that can be reasonably drawn from the evidence. (*Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 266 [42 Cal.Rptr. 89, 398 P.2d 129].) When the evidence is not in conflict and is susceptible of only one reasonable inference. the existence of an estoppel is a question of law. (*California*

___

[8]Section 363 of the Los Angeles City Charter provides that the claims "shall be first presented to and approved in writing by the board, officer or employee authorized by this charter to incur the expenditure or liability represented thereby." (Stats. 1925, p. 1137.)

Section 376 provides: "No suit shall be brought on any claim for money or damages against the City of Los Angeles, or any officer or board of the city until a demand for the same has been presented as herein provided, and rejected in whole or in part. . . . Except in those cases where a shorter period of time is otherwise provided by law, all claims for damages against the city must be presented within six (6) months after the occurrence from which the damages arose, . . ." (Stats. 1925, p. 1141.)

*Cigarette Concessions, Inc.* v. *City of Los Angeles, supra.*)
█ The doctrine of equitable estoppel may be applied against the government where justice and right require it, (*United States Fid. & Guar. Co.* v. *State Board of Equalization* (1956) 47 Cal.2d 384, 388-389 [303 P.2d 1034] and cases there collected.)

█ Whether, in a situation where a claim is prosecuted against it by an employee, former employee or other person deriving his claim from either, a municipal corporation or other public agency may be estopped to assert the statute of limitations against the plaintiff because of such agency's advice to such claimant concerning his substantive rights against the agency, depends upon whether the public agency acted in an unconscionable manner or otherwise set out to, or did take unfair advantage of plaintiff. (*City of Los Angeles* v. *Industrial Acc. Com. (Dillin)* (1965) 63 Cal.2d 255, 257-258 [46 Cal.Rptr. 105, 404 P.2d 809] ;[9] *Adler* v. *City of Pasadena* (1962) 57 Cal.2d 609, 615 [21 Cal.Rptr. 579, 371 P.2d 315].)

█ The public agency is not estopped in every instance where its erroneous representation causes a claimant to fail to act diligently on his claim. We have heretofore distilled from a number of precedents the rule that a city or other public agency is not estopped from asserting the statute of limitations if under all the circumstances "the nature of the conduct or advice of the city is reasonable when given" (*City of Los Angeles* v. *Industrial Acc. Com. (Dillin) supra,* 63 Cal.2d 255, 261). Upon examination the relevant circumstances may be grouped for convenience in two categories: those relating to the culpability or negligence of the public agency or its representatives in their conduct or advice; and those relating to the seriousness of the impact or effect of such conduct or advice on the claimant.

█ Thus, as to the first group of circumstances, it is not always sufficient that the advice or information be merely inaccurate. In *Adler* v. *City of Pasadena, supra,* 57 Cal.2d 609, where the advice given a claimant was, insofar as could

---

[9]Citing, as examples of the application of the doctrine of estoppel in instances *not* involving erroneous representations of substantive law, the following: *Ginns* v. *Savage* (1964) 61 Cal.2d 520 [39 Cal.Rptr. 377, 393 P.2d 689] ; *California Cigarette Concessions, Inc.* v. *City of Los Angeles, supra,* 53 Cal.2d 865; *Lorenson* v. *City of Los Angeles* (1953) 41 Cal.2d 334 [260 P.2d 49]; *Benner* v. *Industrial Acc. Com.* (1945) 26 Cal.2d 346 [159 P.2d 24]; *Farrell* v. *County of Placer* (1944) 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323]; cf. *Benson* v. *Bunting* (1900) 127 Cal. 532 [59 P. 991, 78 Am.St.Rep. 81]. (63 Cal.2d at p. 258, fn. 5.)

be ascertained at that time, consistent with the applicable law and the error therein became apparent only some years later with our decision in *Abbott* (*Abbott* v. *City of Los Angeles, supra,* 50 Cal.2d 438), the city was held not to have acted unreasonably and not to be estopped to assert a claims provision of its charter which barred a recovery of unpaid pension installments accruing more than six months prior to the filing of the claim.

Where, however, the inaccurate advice or information is negligently ascertained or given, the city's conduct may then be deemed to be unreasonable. Thus, in *Tyra* v. *Board of Police etc. Comrs.* (1948) 32 Cal.2d 666 [197 P.2d 710], the public agents advised a claimant that he was not entitled to a recovery because of a specific provision in a city charter, whereas there was in fact no such provision. The misrepresentation was held to have induced the plaintiff's delay in presenting his claim and to have estopped the defendants from asserting the bar of the statute. (See also *Benson* v. *Bunting* (1900) 127 Cal. 532 [59 P. 991, 78 Am.St.Rep. 81].) In *Henry* v. *City of Los Angeles, supra,* 201 Cal.App.2d 299, where the circumstances bearing on the issue of estoppel were essentially the same as those in *Adler,* the court distinguished *Tyra* in the following language: "However, there is a great difference between proceeding contrary to and in violation of a statute or charter, and in proceeding under and in conformity to a charter provision which some 30 years later is determined by a court to be unconstitutional as to particular classes of employees." (*Henry* v. *City of Los Angeles, supra,* 201 Cal.App.2d at p. 311.)

Other factors which may bear on the degree of negligence or culpability of the public agency are whether and to what extent it is certain of the knowledge or information it dispenses (see *Phillis* v. *City of Santa Barbara* (1964) 229 Cal.App.2d 45, 60 [40 Cal.Rptr. 27]), whether it purports to advise and direct or merely to inform and respond to inquiries (see *Tyra* v. *Board of Police etc. Comrs., supra,* 32 Cal.2d 666, 670; *Farrell* v. *County of Placer* (1944) 23 Cal.2d 624, 628 [145 P.2d 570, 153 A.L.R. 323]; cf. *Henry* v. *City of Los Angeles, supra,* 201 Cal.App.2d 299, 311) and, of course, whether it acts in bad faith (see *Lorenson* v. *City of Los Angeles* (1953) 41 Cal.2d 334, 340 [260 P.2d 49]; *Benner* v. *Industrial Acc. Com.* (1945) 26 Cal.2d 346, 348 [159 P.2d 24]). While conduct in bad faith may be culpable and hence unreasonable, it does not follow that good faith conduct

excuses inaccurate information otherwise negligently given. (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524-525 [39 Cal.Rptr. 377, 393 P.2d 689] ; *Orinda-County Fire Protection Dist.* v. *Frederickson & Watson Co.* (1959) 174 Cal.App.2d 589, 593 [344 P.2d 873] ; *Industrial Indem. Co.* v. *Industrial Acc. Com.* (1953) 115 Cal.App.2d 684, 690 [252 P.2d 649].)

As already stated, an examination of the totality of the circumstances must also consider those in the second category relating to the seriousness of the effect of the public agency's conduct or advice on the claimant.[10] ██ ██ Thus it is significant if there is a confidential relationship between the public entity and the claimant, as in the case of an applicant for a pension and a board of fire and police pension commissioners[11] (see *Phillis* v. *City of Santa Barbara, supra,* 229 Cal.App.2d 45, 56), or if the claimant is one who purports to have no knowledge or training which would aid him in determining his rights and the public agency purports to be informed and knowledgeable in these matters (see *Farrell* v. *County of Placer, supra,* 23 Cal.2d 624, 627, 628; *Phillis* v. *City of Santa Barbara, supra,* 229 Cal.App.2d 45, 55-56). Of particular significance is the nature of the right asserted by the claimant. In *Dillin* we set forth the following explication : "'reasonableness' must be viewed in the light of the right the employee-plaintiff seeks to assert; the greater the right of the claimant, the heavier the obligation upon the agency not to mislead him. In matters that gravely affect the welfare of the employee, the employer bears a more stringent duty to desist from conduct or advice that may induce the employee not to explore or pursue his remedies." (*City of Los Angeles* v. *Industrial Acc. Com.* (*Dillin*), *supra,* 63 Cal.2d 255, 258.)

---

[10]The claimant, of course, must have relied on the inaccurate representations and have been induced thereby to forego the making of a timely claim before he can assert an estoppel. (*California Cigarette Concessions, Inc.* v. *City of Los Angeles, supra,* 53 Cal.2d 865, 869; *Safway Steel Products, Inc.* v. *LeFever, supra,* 117 Cal.App.2d 489, 491; see also *Lerner* v. *Los Angeles City Board of Education* (1963) 59 Cal.2d 382, 396 [29 Cal.Rptr. 657, 380 P.2d 97]; *Tyra* v. *Board of Police etc. Comrs., supra,* 32 Cal.2d 666, 670-671; *Benner* v. *Industrial Acc. Com., supra,* 26 Cal.2d 346, 349-350; *Phillis* v. *City of Santa Barbara, supra,* 229 Cal.App.2d 45, 58-59.)

[11]"A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind. A confidential relation may exist although there is no fiduciary relation; . . ." (Rest. 2d Trusts, § 2, com. b.)

"The prerequisite of a confidential relationship is the reposing of trust and confidence by one person in another who is cognizant of this fact." (*Vai* v. *Bank of America* (1961) 56 Cal.2d 329, 338 [15 Cal.Rptr. 71, 364 P.2d 247].)

In *Dillin* representatives of the city advised plaintiffs that the filing of their claims for workmen's compensation benefits would be useless because they were already receiving pensions, thereby causing plaintiffs to fail to file claims on time. This advice was inaccurate but at the time it was given was in accord with the then law. (See *Healy* v. *Industrial Acc. Com.* (1953) 41 Cal.2d 118 [258 P.2d 1].) It also appeared in *Dillin* that the claims asserted by the plaintiffs affected only their right to benefits *in addition* to those they were then receiving, rather than the *basic right* to benefits. The situation was thus similar to that in *Adler* and *Henry,* where the claimants sought only the increased amounts for pensions paid in the past, and unlike that in *Lerner* v. *Los Angeles City Board of Education* (1963) 59 Cal.2d 382 [29 Cal.Rptr. 657, 380 P.2d 97], which involved ''the fundamental right of the pursuit of one's profession: the right of Lerner to be reinstated as a high school teacher.''(63 Cal.2d at p. 261.) Accordingly, we held in *Dillin* that the city's advice to the claimant was not so unreasonable ''in this context'' that the city was barred from asserting the statute of limitations.

In *Lerner,* the period within which the plaintiff could commence an action for reinstatement as a teacher was claimed to have run. Prior thereto he had made inquiry as to his eligibility for reinstatement and had been advised that no public official or agency had jurisdiction to restore his teaching credentials. This statement of the law was based on an opinion of the Attorney General, but two years later was proved to be inaccurate following a court decision in another case. (See *Fountain* v. *State Board of Education* (1958) 157 Cal.App.2d 463 [320 P.2d 899].) There was no evidence that the advice given was anything other than an erroneous but good faith reading of the applicable law, in response to Lerner's inquiries. Commenting on *Lerner,* we subsequently observed in *Dillin* that the ''board's erroneous conduct, in relation to the vital right to employment, could not be considered reasonable in such circumstances'' (*City of Los Angeles* v. *Industrial Acc. Com.* (*Dillin*) *supra,* 63 Cal.2d at p. 261) and that the board in *Lerner* was deemed estopped to assert the bar of the statute of limitations.

We recognize, of course. that in measuring the reasonableness of the conduct or advice of the city or public agency in the light of all the circumstances, some circumstances because of their unusual or exceptional characteristics may predominate or a single circumstance may be determinative of the

issue, all other factors being equal. Thus, in *Adler, Henry* and *Dillin,* an estoppel did not apply because, among other things, the nature of the right asserted by plaintiffs was not one of great magnitude, whereas in *Lerner,* where the negligence or culpability of the city was essentially the same, an estoppel did apply because of the vital nature of the right involved.

In the instant case the record discloses that the representatives of the City acted in good faith in advising plaintiffs concerning the applicable law as they understood and believed it to be. It is noted, however, that they purported to advise as to the legal effect of the statutory provisions as applied to plaintiffs, rather than merely to inform plaintiffs as to the content of the pertinent provisions. Although the court made no specific finding as to a confidential relationship, the record does disclose that plaintiffs, other than La Niece and Slaten, relied upon the advice given them and believed that it was intended in their best interests. In any event, we are unable to distinguish in any substantial manner the City's conduct in this case from that of the defendants in *Adler, Henry* and *Dillin,* insofar as the culpability or negligence of its actions is concerned. We must next determine whether that conduct was reasonable in view of the seriousness of the effect which such conduct may have had on the claimants in seeking to protect their rights.

The claims which plaintiffs assert are, indeed, fundamental in nature. We are dealing here, first, with a widow's right to a continuing pension upon the death of her retired husband. That right is undeniably of great magnitude and must be equated, in the contemplation of the parties affected, with the right to engage in one's chosen profession, as in *Lerner.* Hence, the City bore a heavier and more stringent duty to desist from conduct or advice that may have induced plaintiffs not to pursue their remedies, than in the case of rights of lesser magnitude. (*City of Los Angeles* v. *Industrial Acc. Com.* (*Dillin*) *supra,* 63 Cal.2d 255, 258.) In such circumstances the City's conduct was unreasonable when it undertook to advise as a matter of law that the filing of plaintiffs' claims would be unavailing, and the City's representatives might have reasonably expected that plaintiffs would thereby be induced to forego filing such claims. (*Lerner* v. *Los Angeles City Board of Education, supra,* 59 Cal.2d 382.)

As is apparent, the foregoing determination is dependent upon the serious consequences which plaintiffs would suffer by failing to pursue their claim, and the City's unreasonable

conduct in this respect operates only as a bar to the assertion of the statute of limitations which otherwise would operate to deprive plaintiffs of their right to *any* recovery. However, the loss of such fundamental rights is not a factor in the assertion of the six-month claims provision in the City's charter. In this connection we are not only dealing with something less than the whole, but also with retroactive benefits rather than the vesting of a liquidated right to a means of support and maintenance for the remainder of a lifetime. While the latter may be a right of great magnitude, retroactive accruals have not been deemed to be of such great magnitude that the City is foreclosed from asserting the bar of the claims statute. (*Adler* v. *City of Pasadena, supra,* 57 Cal.2d 609, 614-616; *Henry* v. *City of Los Angeles, supra,* 201 Cal.App.2d 299, 312; see also *City of Los Angeles* v. *Industrial Acc. Com.* (*Dillin*) *supra,* 63 Cal.2d 255, 261.) Under all the circumstances bearing on the right to accruals for pension payments arising more than six months prior to the filing of their claims, we cannot deem the City to have acted unreasonably in advising plaintiffs in good faith concerning the law as it appeared to be set out in the charter provisions. Accordingly, the City is not estopped to assert the bar of its claims provision.

Inconsistent in some important respects with the foregoing resolution of the state of the law is *Casey* v. *City of Los Angeles* (1966) 243 Cal.App.2d 789 [52 Cal.Rptr. 753]. The parties agree that the situation presented in that case is identical in material respects with that in the instant case, other than as to plaintiffs La Niece and Slaten. In *Casey* the court, without distinguishing between an estoppel to assert the bar of the statute of limitations and an estoppel to assert the claims provision of the city charter, held that the city was estopped to assert both. To the extent that *Casey* is inconsistent with the views expressed herein, it is disapproved.

We conclude from the foregoing that the judgment should be affirmed as to plaintiffs Driscoll, Beard and Powell. But the evidence does not justify a similar conclusion as to plaintiffs La Niece and Slaten. As we have pointed out, the record now before us contains no evidence establishing, or from which it can be reasonably inferred, that the City rendered advice or otherwise made representations to the last two plaintiffs as to their eligibility to receive a pension. Indeed the pertinent findings of the trial court on this point significantly exclude them. Thus we fail to find the "conduct" intended to or believed to be intended to, induce action,

the ''ignorance'' of the true state of facts on the part of the parties asserting estoppel, and, particularly, the ''reliance'' by said parties upon such conduct to their injury. (See *California Cigarette Concessions, Inc.* v. *City of Los Angeles, supra,* 53 Cal.2d 865, 869-870, and other cases cited *supra*.) Evaluating the evidence as to these plaintiffs in the light of the more particularized rule governing the conduct of a public agency toward its employees (see *City of Los Angeles* v. *Industrial Acc. Com. (Dillin) supra,* 63 Cal.2d 255, 257-258; *Adler* v. *City of Pasadena, supra,* 57 Cal.2d 609, 615, and other cases cited *supra*), although we recognize that they assert a right of great magnitude, we cannot discern those ingredients of unreasonable conduct which would raise an estoppel against the City and support the trial court's determination to that effect. We conclude therefore that as to plaintiffs La Niece and Slaten, the City on the present record is not estopped to assert the statute of limitations.

These two plaintiffs urge, however, that they attempted to introduce evidence of the custom and practice of the City's employees which would have sufficiently established that the City made representations to them similar to those made to the other plaintiffs and that the City was similarly estopped to assert against them the statute of limitations but that the trial court erroneously excluded such evidence. Indeed at oral argument before us, counsel for plaintiffs La Niece and Slaten, with commendable candor, acknowledged that such evidence must be relied upon to raise an estoppel.[12]

For the guidance of the court below on any retrial, we hold that the proffered evidence is relevant on the issue of the ''reasonableness'' of the City's conduct under all the circumstances and therefore admissible. (Former Code Civ. Proc., § 1870, subd. 12; Evid. Code, § 1105; Witkin, Cal. Evidence (2d ed.), §§ 336-337, pp. 296-297.) However, what we have just said should not be deemed a holding that such evidence is by itself sufficient to raise an estoppel. On the contrary we point out that the proffered evidence falls short of establishing an estoppel for we discern in it no evidence showing or from which it can be reasonably inferred that, assuming such claimed representations were in fact made to the above two

---

[12]Said counsel also contended that counsel for the City had conceded the truth and admissibility of such excluded evidence before the Court of Appeal. Counsel for the City, when before us, disputed such contention. We must be guided by the record which fails to disclose any such concession.

plaintiffs, they were ignorant of the true state of the facts and further that they relied upon the claimed conduct of the City to their injury. (*California Cigarette Concessions, Inc.* v. *City of Los Angeles, supra,* 53 Cal.2d 865, 869-870.) Thus even by invoking against appellant City the doctrine of invited error (*Watenpaugh* v. *State Teachers' Retirement System* (1959) 51 Cal.2d 675, 680 [336 P.2d 165], and cases there collected) plaintiffs La Niece and Slaten cannot obviate reversal.

 As to plaintiff Hand, the trial court evidently concluded that the City was not estopped from asserting the bar of the statute because of the finding that her claim for benefits was denied " 'upon the advice of the City Attorney,' " rather than for the reason that she had not been married to her retired husband for more than one year prior to his retirement, as found in the case of the other plaintiffs. However, the claim which was denied upon the advice of the city attorney was *not* the informal claim about which Mrs. Hand had made inquiry following the death of her husband, but rather the formal claim which she made years later after she was independently advised that she might then be entitled to a pension in view of recent court decisions. The reason for the denial of that claim would appear to have no bearing on the question of the reasonableness of the City's conduct in advising her years earlier in a manner which induced her to forego filing a timely claim. In connection with her original application, it appears that her husband died on October 20, 1950, and shortly thereafter she visited the City's offices for the purpose of filing a claim for pension benefits. The City's reasons for refusing to permit her to file appear in a letter from the City dated November 8, 1950, which states, *inter alia,* concerning what had transpired at the time of her request to file: "In view of the provisions of Section 183 of the City Charter which provides only for widow's benefits in the event that the widow had been married more than one year prior to the date of retirement of the member, the statement was made to you that the secretary of the Board had no authority under the circumstances to accept your application and consequently your request to file an application for such widow's benefits was not complied with." Mrs. Hand also testified in a manner consistent with the contents of the letter, and the court made findings that she, like plaintiffs Driscoll, Beard and Powell, made inquiry to the board concerning her pension rights, was advised by the board that she was ineligible because she had not been married to her

deceased husband for at least one year prior to his retirement, and that she believed and relied on this information and advice. No valid basis exists for drawing any distinction between Mrs. Hand and the other plaintiffs who are entitled to recover. insofar as the bar of any limitations provision is concerned. Accordingly, the judgment must be reversed to the extent that it denies any recovery to her.

The judgment is affirmed as to plaintiffs Driscoll, Beard and Powell; is reversed as to plaintiffs Galbreth (La Niece) and Slaten insofar as it grants any relief or recovery to said plaintiffs; and is reversed in its entirety as to plaintiff Hand. All plaintiffs, except plaintiffs Galbreth (La Niece) and Slaten shall recover costs on appeal from defendants. As between plaintiffs Galbreth (La Niece) and Slaten on the one hand and defendants on the other, the parties shall bear their own costs on appeal.

Traynor, C. J., McComb, J., Peters,J., Tobriner, J., Mosk, J., and Burke, J., concurred.