Filed 9/17/20  S.F. Deputy Sheriffs' Assn. v. City and County of S.F. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SAN FRANCISCO DEPUTY SHERIFFS' ASSOCIATION et al., Plaintiffs and Respondents, v. CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Appellants. | A157120 (City & County of San Francisco Super. Ct. No. CGC-17-563468) |

Plaintiffs San Francisco Deputy Sheriffs' Association and Deputy Sheriff Douglas Jones arbitrated the appeal of Jones's termination with defendant City and County of San Francisco.  Plaintiffs petitioned for enforcement of the arbitration award after then-Sheriff Vicki Hennessy stated she would not accept the arbitrator's decision reducing the penalty and directing that Jones be reinstated.  The trial court confirmed the arbitration award.  Defendant appeals.  We will affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Jones was terminated from the San Francisco Sheriff's Department in December 2015 for misconduct.  The notice of termination stated: "You have the right to appeal this decision by so notifying me, in writing, within twenty (20) days from December 7, 2015.  The appeal of termination is

subject to those procedures provided for in Rule 122 of the Civil Service Commission." The notice was signed by then-Sheriff Ross Mirkarimi.

San Francisco Civil Service Commission Rules, rule 122 contains procedures related to the dismissal of "officers and employees in all classes, except the Uniformed Ranks of the Police and Fire Departments and MTA Service-Critical classes; or as noted or as specifically excluded, or except as may be superceded [*sic*] by a collective bargaining agreement for those employees subject to Charter Section 8.409." (S.F. Civil Service Com. Rules (SF CSC Rules), rule 122.) It states that a permanent employee "may be dismissed for cause upon written charges and after having an opportunity to be heard in her/his own defense." (*Id.*, art. IV, sec. 122.7.1.) It provides for a hearing conducted by a hearing officer chosen from "organizations such as the American Arbitration Association or the State Conciliation Service which customarily provide hearing officers; or from a list of qualified hearing officers certified by the Civil Service Commission . . . ." (*Id.*, art. IV, sec. 122.7.3.)

On December 27, 2015, Jones sent a written notice to appeal his termination. In the notice, Jones requested that "his appeal be heard by a neutral arbitrator." The next day, counsel for the San Francisco Sheriff's Department confirmed receipt of the notice and stated that she would send a letter requesting a list of arbitrators. The Sheriff's Department's counsel sent the letter to the State Mediation and Conciliation Service on January 5, 2016. It stated: "I am representing the San Francisco Sheriff's Department in a termination case and am writing to request a list of seven arbitrators for the Arbitration Appeal of the above referenced San Francisco Sheriff's Deputy."

2

The parties selected an arbitrator, Fred Butler, and proceeded to arbitration in June 2017. During the arbitration proceedings, the parties entered into certain stipulations regarding joint exhibits. Counsel for the San Francisco Sheriff's Department asked: "Joint No. 4 is just the civil service and department rules with regard to this process which we are following requiring just cause and requirement of a hearing officer. Stipulated?" Counsel for Jones responded: "So stipulated."

The arbitrator issued a decision in October 2017. It noted that the parties "stipulated at the hearing that the arbitrator shall have jurisdiction to rule on all questions of law and evidence as they pertain to the grievance." The decision stated: "After a review of the testimony and evidence submitted in this matter, the decision of the Department is reversed." The arbitrator reduced the penalty to a written reprimand and directed that Jones be reinstated, with back pay and benefits.

On October 27, 2017, counsel for the San Francisco Sheriff's Department sent an email to the arbitrator stating: "I have forwarded the invoice in this case to our financial department. Please be advised that SFSD will be paying the whole amount as this was a termination case."

On October 31, 2017, counsel for the San Francisco Sheriff's Department sent an email to Jones's counsel stating: "I have been advised that the reinstatement for Deputy [Jones] is being processed and it is anticipated that he will start on December 16, 2017. He will receive back pay and benefits from that date back to when he was initially separated."

On December 5, 2017, however, Sheriff Hennessy sent a letter to Jones. It stated that the relevant version of the collective bargaining agreement between the city and the San Francisco Deputy Sheriffs' Association, in effect from July 1, 2014, to June 30, 2019 (2014–2019 CBA), "makes clear that an

3

appeals decision shall not be binding on the department when the decision is a recommendation of a reduction in discipline." Therefore, Sheriff Hennessy stated she would "not accept the arbitrator's recommendation for reinstatement, back pay, or the reduction of discipline to a written reprimand." The letter concluded that Jones's December 2015 termination was "final."

The 2014–2019 CBA provided for appeal of disciplinary grievances to the Administrative Appeals Board (Appeals Board). It stated that the decision of the Appeals Board was binding on the parties *unless* the decision recommended a reduction in discipline. In other words, Sheriff Hennessy retained discretion to reject an Appeals Board decision that recommended a reduction in the discipline imposed. The 2014–2019 CBA required that appeals of disciplinary grievances follow this process. It stated that disciplinary grievances "may not be submitted to arbitration . . . ."[1]

On December 29, 2017, plaintiffs filed a complaint asserting four causes of action against the City and County of San Francisco as well as Sheriff Hennessy:[2] (1) enforcement of arbitration award; (2) petition for writ of mandamus; (3) damages pursuant to Government Code section 3309.5; and (4) petition for writ of administrative mandamus. Among other things, the complaint alleged that Sheriff Hennessy had rejected the arbitration award

---

[1] The current version of the collective bargaining agreement does not require disciplinary grievances to be appealed to the Appeals Board. It now provides that the San Francisco Deputy Sheriffs' Association "may appeal imposed discipline to binding arbitration . . . ." (Collective Bargaining Agreement Between the City and County of S.F. and the S.F. Deputy Sheriffs' Assn. (July 1, 2019, to June 30, 2022) (2019–2022 CBA), art. I, sec. I, par. 5, p. 8 <https://sfdhr.org/sites/default/files/documents/MOUs/DSA-2019-MOU.pdf> [as of Sept. 16, 2020].)

[2] Sheriff Hennessy is not a party to this appeal.

4

under the 2014–2019 CBA, but Jones's appeal had proceeded under rule 122 *as directed by the San Francisco Sheriff's Department*. The complaint alleged that given such conduct and Jones's reasonable reliance on that conduct, defendants should be "estopped from contending otherwise."

The parties agreed to the phasing of plaintiffs' causes of action and sought a decision from the trial court on enforcement of the arbitration award in the first phase. In their briefing for this first phase, plaintiffs attached copies of past arbitrations involving the San Francisco Deputy Sheriffs' Association and the City and County of San Francisco. Plaintiffs argued that this evidence showed "[f]or the past two decades, at least, lengthy suspensions and termination disciplinary actions taken by the Department against permanent deputy sheriffs have been subject to binding arbitration." Defendant did not present any contrary evidence.

On September 26, 2018, the trial court granted plaintiffs' petition to confirm the arbitration award. The trial court found the parties "entered into a valid agreement to arbitrate [Jones's] grievance of his termination of his employment."

Defendants subsequently moved for reconsideration, citing authority not contained in their earlier briefing for the proposition that neither Sheriff Hennessy nor her representatives could enter into an arbitration agreement that deviated from the procedures required by the 2014–2019 CBA. At the November 27, 2018 hearing, the trial court explained that the parties' arguments now overlapped with issues that they had agreed would not be addressed in the first phase. On December 12, 2018, the trial court vacated its September 26, 2018 order "without prejudice to Plaintiff [*sic*] bringing a new petition to compel arbitration without any constraints to the parties as

5

to phasing." Plaintiffs renewed their petition for enforcement of the arbitration award.

On March 1, 2019, the trial court confirmed the arbitration award. The trial court found that the San Francisco Sheriff's Department had proceeded with appeals from deputy terminations under rule 122 for 20 years. As to Jones's specific case, the trial court found that the San Francisco Sheriff's Department had confirmed the applicability of rule 122 "at every step of the way"—in notifying Jones that his appeal was subject to the procedures in rule 122, requesting a list of arbitrators under rule 122, and stipulating that the arbitrator had jurisdiction under rule 122. The trial court concluded that "[t]hese undisputed facts establish both an egregious violation of Deputy Jones' procedural due process rights and an equitable estoppel."

The trial court confirmed the arbitrator's award for Jones. It ordered the City and County of San Francisco to comply with the award and that a writ of mandate would issue. On March 26, 2019, the trial court entered judgment for the plaintiffs as their remaining causes of action were now moot. On April 2, 2019, the trial court issued a writ of mandate, commanding defendants to comply with the arbitrator's decision to reinstate Jones and award him full back pay. This appeal followed.

## DISCUSSION

Defendant argues that the trial court erred for three primary reasons: (1) Jones is not entitled to relief on the equitable estoppel theory; (2) the 2014–2019 CBA's procedures for appeal of a disciplinary grievance afforded Jones due process; and (3) the asserted agreement to arbitrate Jones's appeal was void and unenforceable as a matter of law. We address—and reject—

6

defendant's equitable estoppel argument.  As this issue is dispositive, we do not reach the other issues raised in the appeal.[3]

## I.  EQUITABLE ESTOPPEL

"The doctrine of equitable estoppel is founded on notions of equity and fair dealing and provides that a person may not deny the existence of a state of facts if that person has intentionally led others to believe a particular circumstance to be true and to rely upon such belief to their detriment." (*City of Oakland v. Oakland Police and Fire Retirement System* (2014) 224 Cal.App.4th 210, 239 (*City of Oakland*).)

"Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel:  (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305 (*Driscoll*).)

"Where, as here, a party seeks to invoke the doctrine of equitable estoppel against a governmental entity, an additional element applies.  That is, the government may not be bound by an equitable estoppel in the same manner as a private party unless, 'in the considered view of a court of equity,

---

[3] Plaintiffs and defendant each filed requests for judicial notice with their briefs.  We deferred ruling on the requests until the merits of the appeal.  (See *People v. Preslie* (1977) 70 Cal.App.3d 486, 493–494.)  Having now considered the requests, we deny them in full.  The requests ask us to take judicial notice of various documents related to defendant's argument that the asserted arbitration agreement was void and unenforceable.  In light of our conclusion that we need not address this argument, we deny the requests for judicial notice as unnecessary to our decision.  (See, e.g., *TransparentGov Novato v. City of Novato* (2019) 34 Cal.App.5th 140, 146, fn. 3.)

the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel.' " (*City of Oakland, supra*, 224 Cal.App.4th 210 at p. 240, quoting *City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 496–497 (*Mansell*).)

"The existence of an estoppel is generally a question of fact for the trial court whose determination is conclusive on appeal unless the opposite conclusion is the only one that can be reasonably drawn from the evidence." (*Driscoll, supra*, 67 Cal.2d at p. 305.) "When the evidence is not in conflict and is susceptible of only one reasonable inference, the existence of an estoppel is a question of law." (*Ibid.*)

Here, defendant does not make any argument regarding the first two general elements of equitable estoppel. Instead, it argues that plaintiffs fail to establish the remaining two general elements and the additional element for equitable estoppel against a government entity: (1) plaintiffs were not ignorant of the 2014–2019 CBA provision requiring an appeal to be submitted to the Appeals Board; (2) Jones has not suffered any detriment; and (3) there is no injustice to Jones by holding him to the terms of the 2014–2019 CBA, let alone any injustice that warrants the contravention of its appeals provision. We address each argument in turn.

## A. Ignorance of True State of Facts

Equitable estoppel requires that the party asserting estoppel be "ignorant of the true state of facts." (*Driscoll, supra*, 67 Cal.2d at p. 305.) Defendant argues this element is not satisfied because plaintiffs cannot claim they were ignorant of the "longstanding" 2014–2019 CBA appeals provision which precluded binding arbitration in disciplinary cases. Defendant offers no legal authority to support its argument.

8

We find the California Supreme Court's analysis in *Driscoll* instructive here. (*Driscoll*, *supra*, 67 Cal.2d at pp. 306–307.) In that case, widows of retired former members of the Los Angeles Police and Fire Departments filed an action to obtain past and future pension rights. (*Id.* at p. 300.) The government defendants argued that the plaintiff widows' claims were barred by the statute of limitations. (*Id.* at p. 302.) In its analysis, the California Supreme Court described a number of factors that may be considered in assessing an erroneous representation by a public agency. (*Id.* at p. 306.) Such factors include "whether and to what extent [the agency] is certain of the knowledge or information it dispenses" and "whether it purports to advise and direct or merely to inform and respond to inquiries . . . ." (*Id.* at p. 307.) Considering these factors, the California Supreme Court concluded that estoppel applied as to plaintiff widows who were advised by the pension board that they were not entitled to receive a pension. (*Id.* at p. 303.) It explained that the pension board had "purported to advise as to the legal effect of the statutory provisions as applied to plaintiffs, rather than merely to inform plaintiffs as to the content of the pertinent provisions." (*Id.* at p. 310.)

The California Supreme Court also described other relevant factors, including "if there is a confidential relationship between the public entity and the claimant" and "if the claimant is one who purports to have no knowledge or training which would aid him in determining his rights and the public agency purports to be informed and knowledgeable in these matters [citations]." (*Driscoll*, *supra*, 67 Cal.2d at p. 308.) The California Supreme Court explained that this "confidential relationship" exists when one gains the confidence of the other and " 'purports to act or advise with the other's interest in mind.' " (*Id.* at p. 308, fn. 11.) While the trial court had made no

9

specific finding as to a confidential relationship, the California Supreme Court concluded that the plaintiff widows believed the pension board's advice was in their best interest and relied upon it. (*Id.* at p. 310.)

Other courts have cited these *Driscoll* factors in applying equitable estoppel against a governmental entity. In *City of Oakland*, for example, the city petitioned for a writ of mandate against the Oakland Police and Fire Retirement System and its board, alleging overcompensation of retirees. (*City of Oakland*, *supra*, 224 Cal.App.4th at pp. 224–225.) The court concluded that the city and board were equitably estopped from requiring retirees to repay any retirement benefits based on the improper inclusion of shift differential pay. (*Id.* at p. 246.) It explained that a confidential relationship existed among the parties, and that the retirees had reasonably relied upon the "careless" representation by the city regarding how shift differential pay would be treated. (*Id.* at pp. 240–242.)

Similarly, in *Crumpler v. Board of Administration* (1973) 32 Cal.App.3d 567, 570–571, animal control officers for the City of San Bernardino sought a writ of mandate after the retirement board determined that the officers were not entitled to be classified as local safety members and that their reclassification should be applied back to the date each officer became a member of the retirement system. The appellate court concluded that the board was estopped from reclassifying the officers retroactively, as each officer was informed that he would be classified as a local safety member prior to accepting employment and had been treated as such for at least five years. (*Id.* at pp. 571–573.) It explained that the erroneous representation was given to the officers without verifying its accuracy and that the officers were ignorant of the fact that the advice was erroneous. (*Id.* at p. 582.)

Here, the *Driscoll* factors support our determination that Jones was ignorant of the true state of facts regarding his appellate process. Defendant advised Jones, in no uncertain terms, that his appeal was subject to rule 122. The notice of termination advised Jones of his appellate rights and the associated procedures, and Jones's request to arbitrate demonstrates that he believed the advice was in his best interest and relied upon it. The San Francisco Sheriff's Department's counsel subsequently requested a list of arbitrators, proceeded to arbitration, stipulated to the application of rule 122, and confirmed after arbitration that Jones's reinstatement was in process— each step confirming defendant's initial advice to Jones.

We are not persuaded by defendant's argument that access to the 2014–2019 CBA could have dispelled Jones's ignorance. The undisputed evidence shows that, in practice, the San Francisco Sheriff's Department had proceeded with appeals from deputy terminations under rule 122 for the past two decades. Access to such evidence would have confirmed defendant's erroneous advice. In sum, we conclude that this element, Jones's ignorance of the true state of facts, has been satisfied.

## B. Reliance on Conduct to Injury

Equitable estoppel also requires that the party asserting estoppel rely to its injury on the conduct of the party to be estopped. (*Driscoll*, *supra*, 67 Cal.2d at p. 305.) Defendant argues this element is not satisfied because plaintiffs cannot claim that Jones suffered any detriment since the 2014–2019 CBA's appeals process, not the rule 122 arbitration process, "was the only process available to him notwithstanding the Sheriff Department's incorrect representations." Defendant offers no legal authority to support its argument.

11

The fundamental principle underlying equitable estoppel helps guide our analysis here. In *Mansell*, the California Supreme Court explained that it "perhaps most aptly expressed" the doctrine of equitable estoppel by stating: " 'The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted.' " (*Mansell, supra*, 3 Cal.3d at p. 488, quoting *Seymour v. Oelrichs* (1909) 156 Cal. 782, 795.) From that principle, the four general elements were established, including that the party asserting estoppel " 'relied directly upon such admission, and will be injured by allowing its truth to be disproved.' " (*Mansell*, at p. 490, quoting *Boggs v. Merced Mining Co.* (1859) 14 Cal. 279, 367–368.) Here, the undisputed facts in the record show that defendant agreed to arbitrate Jones's appeal, by directing him that the appeal would proceed pursuant to rule 122, requesting arbitrators, stipulating that the arbitrator had jurisdiction, and participating in the appeal. Jones succeeded in arbitration: The arbitrator sustained his grievance and directed that he be reinstated with backpay and benefits. Allowing defendant to avoid this result and instead exercising discretion under the 2014–2019 CBA to reject the decision would injure Jones by retroactively depriving him of the ability to arbitrate his grievance pursuant to the parties' agreement to arbitrate and by ultimately depriving him of his employment. Depriving Jones of his right to arbitrate is also contrary to California's strong policy favoring arbitration agreements and its direction that courts "indulge every intendment to give effect to such proceedings." (*Pacific Inv. Co. v. Townsend* (1976) 58 Cal.App.3d 1, 9.) We conclude that this element, Jones's reliance on defendant's conduct to his injury, has been satisfied.

### C. Sufficient Injustice to Justify Effect

Finally, equitable estoppel against a governmental entity requires that "the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*Mansell*, *supra*, 3 Cal.3d at pp. 496–497.) As explained in *Mansell*, the tension of these twin principles must be balanced: (1) "that '[t]he doctrine of equitable estoppel may be applied against the government where justice and right require it' " but (2) "an estoppel will not be applied against the government if to do so would effectively nullify 'a strong rule of policy, adopted for the benefit of the public . . . .' " (*Id.* at p. 493, quoting *Driscoll*, *supra*, 67 Cal.2d at p. 306, and *San Diego County v. California Water & Tel. Co.* (1947) 30 Cal.2d 817, 829–830.) Defendant argues that both principles weigh against application of equitable estoppel here.

First, defendant argues that there is no injustice in holding Jones to the terms of the 2014–2019 CBA, as negotiated with the San Francisco Deputy Sheriffs' Association on behalf of deputies such as Jones. We disagree. Courts have recognized that a party suffers injustice when its opposing party participates in arbitration without objection and then, only after losing in arbitration, argues that the underlying agreement is illegal.

In *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 29, the plaintiff had petitioned to vacate and modify an arbitration award, arguing that his underlying employment agreement was illegal and in violation of public policy. The California Supreme Court determined that plaintiff had raised the argument with the arbitrator, but concluded that the issue would have been waived if he had failed to do so. (*Id.* at p. 30.) It explained: "[W]e cannot permit a party to sit on his rights, content in the knowledge that

should he suffer an adverse decision, he could then raise the illegality issue in a motion to vacate the arbitrator's award. A contrary rule would condone a level of 'procedural gamesmanship' that we have condemned as 'undermining the advantages of arbitration.' " (*Ibid.*) Such injustice has also been recognized in applying equitable estoppel. (*Lovret v. Seyfarth* (1972) 22 Cal.App.3d 841, 846 [concluding that party was estopped from claiming she was not a party to the arbitration, in accordance with "the general principle that one cannot blow hot and cold at various stages of a given proceeding"].)

Here, we agree with the trial court that the undisputed facts show that defendant confirmed the applicability of rule 122 and its arbitration process "at every step of the way—before, during and after." The notice of termination stated Jones's appeal was subject to rule 122. Jones's notice of appeal was accepted. A letter was sent to the State Mediation and Conciliation Service requesting a list of arbitrators. Defendant participated in the arbitration. Defendant entered into stipulations regarding applicability of rule 122 and the jurisdiction of the arbitrator. It began processing Jones's reinstatement. The 2014–2019 CBA appeals process issue was not raised until almost two months after defendant had lost the arbitration. Further, the issue was raised by the new Sheriff Hennessy in her letter purporting to reject the arbitrator's decision. On this record, we conclude that injustice would result from a failure to apply estoppel here.

Second, defendant argues that equitable estoppel is improper regardless of any injustice because application of the doctrine would contravene a statutory limitation: the 2014–2019 CBA appeal procedures, as codified by city ordinance. Defendant relies on *McGlynn v. State of California* (2018) 21 Cal.App.5th 548 (*McGlynn*) to support its position.

14

In *McGlynn*, six judges were elected to the superior court in midterm elections but did not take office until six months later. (*McGlynn*, *supra*, 21 Cal.App.5th at p. 551.) During that six-month period, the California Public Employees' Pension Reform Act of 2013 (PEPRA) became effective. (*Id.* at p. 552.) The judges filed a petition for writ of mandate to be included in the pre-PEPRA system, as the PEPRA system contained less favorable retirement provisions. (*Id.* at pp. 552–553.) They argued that equitable estoppel should be applied because state personnel represented that their retirement benefits would be governed by the pre-PEPRA system, and the judges relied on those representations in deciding to leave private practice and go into public service. (*Id.* at p. 553.) The court rejected the argument, determining that application of equitable estoppel in such a context would require the system administrators "to act in excess of statutory authority." (*Id.* at p. 562.) The court cited *City of Oakland* for the proposition that equitable estoppel is "improper when application of the doctrine would contravene a 'statutory limitation.' " (*Id.* at p. 561, quoting *City of Oakland*, *supra*, 224 Cal.App.4th at p. 243.)

In *City of Oakland*, the city petitioned for writ of mandate regarding overcompensation of retirees but also sought retroactive relief, including a determination regarding the proper manner for recovering those overpayments from retirees. (*City of Oakland*, *supra*, 224 Cal.App.4th at pp. 224–225.) The city argued that estoppel was improper because it would enlarge the statutory power of the board, requiring it to act in violation of the city charter. (*Id.* at p. 243.) The court acknowledged the "line of cases holding that estoppel cannot lie to contravene any statutory limitation on an agency's authority" and that "were we dealing with the *prospective* application of estoppel on these facts, we might well find this authority

15

controlling . . . ." (*Ibid.*)  The court explained that it was dealing with a *retroactive* issue:  the treatment of overpayments already issued to retirees by the board.  (*Id.* at p. 244.)  Given this backdrop, the court determined that application of equitable estoppel was appropriate.  (*Ibid.*)

We find the reasoning in *City of Oakland* persuasive on the undisputed facts in the record.  Here, the government conduct that allegedly violated the 2014–2019 CBA's appeal procedures has already occurred.  The San Francisco Sheriff's Department directed that Jones's appeal proceed under rule 122.  Defendant participated in the arbitration and stipulated that the arbitrator had jurisdiction to rule on all questions of law and evidence as they pertain to the grievance.  Defendant now seeks to *retroactively* correct this past conduct.  As in *City of Oakland*, we conclude that this backdrop supports the application of equitable estoppel.

Moreover, any broader public interest or policy concern regarding the application of equitable estoppel here is minimal because the 2014–2019 CBA is no longer in effect.  Four months after the trial court confirmed the arbitration award for Jones, a new version of the collective bargaining agreement went into effect that allows for the arbitration of disciplinary grievance appeals. (See 2019–2022 CBA, art. I, sec. I, pp. 5–10.)  As the trial court aptly foreshadowed:  "Issues as to how future terminations of sheriff's deputies may be appealed need not be reached in Deputy Jones' case."

In sum, we conclude that defendant is equitably estopped from challenging its agreement to arbitrate the appeal of Jones's termination and the trial court did not err in confirming the arbitration award on this basis.

## DISPOSITION

The judgment is affirmed.  Plaintiffs are entitled to their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____
Jackson, J.

WE CONCUR:


_____
Fujisaki, Acting P. J.


_____
Petrou, J.


A157120/*San Francisco Deputy Sheriffs' Assn. v. S.F.*