Filed 4/22/21  Burke v. Clovis Unified School District CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LAURA BURKE et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>CLOVIS UNIFIED SCHOOL DISTRICT et al.,<br><br>    Defendants and Respondents. | F079462<br><br>(Super. Ct. No. 19CECG00473)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Rosemary McGuire, Judge.

Georgeson Law Offices, C. Russell Georgeson and Robert J. Willis for Plaintiffs and Appellants.

DeMaria Law Firm, Anthony N. DeMaria and Ryan W. Porte for Defendants and Respondents.

-ooOoo-

Appellants filed this appeal to challenge an order denying their petition to file a late claim under the Government Claims Act (Gov. Code, § 810 et seq.).[1]  We conclude the trial court properly denied the petition because (1) the documents submitted to the

---

[1]    Unlabeled statutory references are to the Government Code.

defendants within six months of the accrual of appellants' causes of action did not constitute a "claim as presented" for purposes of sections 910.8 and 911; (2) the application for leave to present a late claim was not submitted to the public entity within the one-year period specified in section 911.4, subdivision (b); (3) the doctrine of equitable estoppel does not bar the defendants from asserting appellants failed to present a timely claim and failed to present a timely application to present a late claim; and (4) the doctrine of equitable tolling does not apply and, therefore, cannot be relied upon to extend the amount of time appellants had to comply with the claim presentation requirements of the Government Claims Act.

We therefore affirm the judgment.

## FACTS

Appellants are Laura Burke, her daughter Rachel Burke, Cindy Promnitz, and her daughter Maddie Promnitz.[2] They, along with Tammi Cooper and her daughter Melodi Cooper, are the plaintiffs in a lawsuit against defendants Clovis Unified School District (Clovis Unified) and Stacey Schiro. Rachel, Maddie and Melodi are former Clovis High School students (Students) who participated in the pep and cheer program. Schiro is employed by Clovis Unified as a physical education teacher and the director of the pep and cheer squads at Clovis High School.

Students contend the facts giving rise to their injuries began in March 2016 when the Clovis High School pep and cheer squads attended a national competition in Anaheim. The details of the relentless abuse, bullying, harassment and malicious conduct Schiro allegedly directed at Rachel, Maddie and Melodi and the resulting personal injuries need not be described in this opinion. Here, we do not reach the merits of these allegations, but address whether Students complied with the Government Claims Act.

---

**2** For convenience, this opinion refers to appellants as "Students."

The allegations and evidence relevant to the accrual of Students' causes of action need not be described because the parties agree on the accrual date. Students alleged their "causes of action against [defendants] accrued on or about June 2017." Defendants contend the specific date is no later than June 9, 2017, which was the end of Clovis High School's school year and marks the day when Schiro was no longer in a position of control over Students. Students have not contested the use of June 9, 2017, as the accrual date. Therefore, we accept that date for purposes of this opinion.

On November 1, 2017, an attorney representing Students sent a 10-page letter to the superintendent of Clovis Unified describing the issues Students had with Schiro during the 2016-2017 season. The letter was labeled personal and confidential and copies were sent to the members of Clovis Unified's board. The letter stated Schiro's misconduct and Clovis Unified's responsibility "to competently investigate and take appropriate action to eliminate [Schiro's] abuse … and the environment she created … can be addressed in a personal meeting with [Clovis Unified's] administrative staff, their lawyers, and any other authorized personnel. My clients insist this matter is not going to go away, nor can it be swept under the rug any longer. [¶] Please advise of your intentions specifically whether you intend to investigate my clients' concerns, or if you intend to forego any further consideration of their concerns." The letter did not mention the Government Claims Act or any section of the act. Also, it did not threaten litigation or demand monetary relief.

Clovis Unified's attorney telephoned Students' attorney and advised that Clovis Unified would not be able to address the issues raised in the November 1, 2017 letter until after January 1, 2018. On January 19, 2018, Students' attorney sent a one-page letter labeled personal and confidential to Clovis Unified's superintendent. In the letter, Students' attorney referred to the telephone call with the attorney representing Clovis Unified, stated he had informed Clovis Unified's attorney of his clients' names, and indicated he had not been contacted since the telephone call. The letter asked whether

3.

Clovis Unified was going to address the issues and stated: "Please advise of the Clovis Unified School District's intentions no later than January 24, 2018 to avoid further actions being taken to have the issues addressed."

On January 25, 2018, general counsel for Clovis Unified sent Students' attorney a letter "to provide an update regarding your request for the District to investigate the Clovis High Pep and Cheer program and to conduct a financial audit of the program as well." The letter stated: "As we discussed, the District assured you that an investigation of the matter would take place and also an audit.… The District is currently investigating the allegations that you made in your correspondence, but the investigation has not been completed. The audit, on the other hand, has been completed. The District expects to complete the investigation and provide [] a written response to your correspondence by mid-February."

On February 8, 2018, Students met in person with Norm Anderson, a Clovis Unified employee who informed them he was investigating their complaints regarding Schiro's conduct. Anderson asked Students questions and provided them with limited information about his investigation. For instance, Anderson stated he had spoken to others about Schiro's conduct but could not provide the identities of those persons and he had not spoken yet with Schiro. At the end of the meeting, Anderson assured Students he would finish his investigation in about a week and they would know the outcome, though he was not specific about how they would be notified.

About two weeks after this meeting, Anderson contacted Students requesting updated contact information for Taylor Coloka. Coloka was a pep team coach who unexpectedly quit coaching in February 2017.

On June 25, 2018, Students served Clovis Unified with claims using Clovis Unified's preprinted "Complaint Form" and a 29-page attachment. The remedies section of the attachment stated:

"The original remedy sought prior to being ignored and bypassed by [Clovis High School] Administration and [Clovis Unified] Administration was simple, proper disciplinary and supervisory action that would prevent Ms. Schiro from continuing her despotic reign of terror over the young women who participate in CHS Pep and Cheer."

The remedies section also stated that because Students' previous complaints were ignored and shoved under the rug, "that solution is no longer enough" and that Students "now demand monetary damages to rectify and compensate for the emotional and physical representations" they suffered. Students requested various amounts of general and special damages and punitive damages of at least $150,000.

On July 24, 2018, Clovis Unified responded to Students' complaint form by serving them with a "NOTICE OF RETURN OF LATE CLAIM," which stated:

"The claim you presented to Clovis Unified … on June 25, 2018, is being returned because it was not presented within six (6) months after the event or occurrence as required by law. See Government Code §§901 and 911.2(a). Because the claim was not presented within the time allowed by law, no action was taken on the claim.

"Your only recourse at this time is to apply without delay to [] Clovis Unified [] for leave to present a late claim. See Government Code §§911.4 and 912.2, inclusive and Government Code §946.6. In some circumstances, leave to present a late claim will be granted. See Government Code §911.6."

On August 28, 2018, Students served Clovis Unified with their applications for leave to file a late claim. Students did not receive a response to the application within 45 days after it was presented to Clovis Unified. As a result, the application was deemed denied by operation of subdivision (c) of section 911.6.

**PROCEEDINGS**

On February 5, 2019, Students filed a petition to present a late claim under section 946.6. On the same day, Students Tammi Cooper and Melodi Cooper filed a complaint against defendants with eight causes of action. In April 2019, defendants filed papers opposing the petition to present a late claim and Students filed a reply.

5.

The superior court issued a tentative ruling to deny Students' petition.  On May 2, 2019, the court heard oral argument and took the matter under advisement.  On May 3, 2019, the court issued a minute order denying the petition to file a late claim.  The court found Students' June 25, 2018 claim was submitted outside the six-month window prescribed by section 911.2 and their application for leave to file a late claim was more than 14 months after the accrual of their causes of action and, thus, untimely under section 911.4.  The court rejected Students' arguments about substantial compliance and equitable estoppel.  Students filed a timely appeal.

## DISCUSSION

I.    CLAIM PRESENTATION AND SUBSTANTIAL COMPLIANCE

A.    <u>Legal Principles</u>

1.    *Claim Presentation Requirement*

The Government Claims Act requires that "all claims for money or damages against local public entities" must be "presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) .…" (§ 905.)  Chapter 2 sets forth requirements for the presentation and consideration of claims.  Among other things, it specifies what a written claim must contain (§ 910) and the time in which the claim must be presented (§ 911.2).

When a personal injury is involved, the written claim for damages must be presented to the public entity "not later than six months after the accrual of the cause of action."  (§§ 911.2, subd. (a), 945.4.)  As to contents, section 910 provides:

> "A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all of the following:  [¶]  (a) The name and post office address of the claimant.  [¶]  (b) The post office address to which the person presenting the claim desires notices to be sent.  [¶]  (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.  [¶]  (d) A general description of the … injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.  [¶]  (e) The name or names of the public

6.

employee or employees causing the injury, damage, or loss, if known. [¶] (f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case."

The presentation of a written claim to the public entity serves at least three purposes. First, it provides the public entity with sufficient information to enable it to perform an adequate investigation of the claim and, if appropriate, settle it without the expense of litigation. (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 446.) Second, the written claim informs the public entity of potential liability so it can better prepare for the upcoming fiscal year. (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1776.) Third, in certain situations, the claim provides the public entity an opportunity to fix a dangerous condition and avoid further injuries. (*San Diego Unified Port Dist. v. Superior Court* (1988) 197 Cal.App.3d 843, 847.)

### 2. *Substantial Compliance*

The claim filing requirement is not intended to eliminate meritorious lawsuits or to snare the unwary when the requirement's purpose has been satisfied. (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority*, *supra*, 34 Cal.4th at p. 446.) If the claimant has attempted to comply with the claim requirements and failed to achieve technical perfection, the doctrine of substantial compliance will validate the claim if it substantially complies with all statutory requirements even though it is technically deficient in one or more particulars. (*Connelly v. County of Fresno* (2006) 146 Cal.App.4th 29, 38; see *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 745, fn. 11 [substantial compliance "demands at least some compliance with all the statutory claim requirements"]; Van Alstyne et al., Cal. Government Tort Liability

7.

Practice (Cont.Ed.Bar 4th ed. 2020) § 5.69, pp. 5-55 to 5-56 [examples of cases applying the doctrine to overlook minor defects].)

### 3. *Public Entity's Duty to Notify Claimant of Defects*

When a claim presented does not substantially comply with the claim filing requirements, the public entity must advise the claimant of the deficiencies or lose the right to assert the noncompliance as an affirmative defense. Pursuant to Section 910.8:

> "If, in the opinion of the board or the person designated by it, a claim as presented fails to comply substantially with the requirements of Sections 910 and 910.2, … the board or the person may, at any time within 20 days after the claim is presented, give written notice of its insufficiency, stating with particularity the defects or omissions therein."

The public entity may not act on the claim for 15 days after the written notice of defects is given. (§ 910.8.) The statute allows a claim to be amended at any time before final action is taken by the public entity and the amendment will be considered part of the original claim for all purposes. (§ 910.6, subd. (a).) As a result of these provisions, claimants who are warned of a defect have an opportunity to amend the claim and cure the defects. Alternatively, if a claimant is not warned about a defect or omission in accordance with section 910.8, the public entity waives any defense as to the insufficiency of the claim. (§ 911.)

### 4. *Application for Leave to Present a Late Claim*

When a claim is not presented within the six months specified in section 911.2, "a written application may be made to the public entity for leave to present that claim." (§ 911.4, subd. (a).) The application must be presented "within a reasonable time not to exceed one year after accrual of the cause of action and shall state the reason for the delay in presenting the claim." (§ 911.4, subd. (b).) The proposed claim must be attached to the application. (*Ibid*.)

     5.     *Petition for relief from the claim filing requirements*

When a public entity denies a late claim application, the applicant's last recourse is to petition the court for relief from the claim filing requirements. (*J.M. v. Huntington Beach High School Dist.* (2017) 2 Cal.5th 648, 653–656 (*J.M.*).) "The petition shall be filed within six months after the application to the board is denied or deemed to be denied pursuant to Section 911.6." (§ 946.6, subd. (b).) This six-month period is a mandatory statute of limitations. (*J.M.*, *supra*, at p. 653.) A court may relieve the petitioner of claim presentation requirements only if, among other things, the late claim application was made within a reasonable time and not more than one year after accrual of the cause of action. (*J.M.*, *supra*, at p. 653; § 911.4, subd. (b).)

B.     <u>Use of the Public Entity's Claim Form</u>

Defendants contend Students' letter of November 1, 2017—whether considered alone or with the January 19, 2018 letter—cannot be construed as a written claim under the Government Claims Act because, among other things, Students did not use Clovis Unified's official "Complaint Form." The statute governing the use of claim forms adopted by a public entity currently provides:

> "The board *shall* provide forms specifying the information to be contained in claims *against the state or a judicial branch entity*. The person presenting a claim *shall* use the form in order that his or her claim is deemed in conformity with Sections 910 and 910.2. A claim *may* be returned to the person if it was not presented using the form. Any claim returned to a person *may* be resubmitted using the appropriate form." (§ 910.4, italics added.)

Before 2002, section 910.4 authorized state and local public entities to provide forms for claimant's use. (Van Alstyne et al., Cal. Government Tort Liability Practice, *supra*, § 6.9, p. 6-10.) In addition, "[t]he statute allowed claimants either to use the provided form, or to submit their own claim that substantially complied with [sections] 910 and 910.2." (*Ibid.*; see Stats. 1965, ch. 653, § 2, p. 2010.) In 2002, the Legislature amended section 910.4 "to provide that *all* public entities must provide mandatory claim

forms and must require all claimants to use them." (Van Alstyne et al., Cal. Government Tort Liability Practice, *supra*, § 6.9, p. 6-10, italics added.) In 2004, these mandatory requirements were narrowed significantly by an amendment that limited the approved-form requirement to claims against the state. (*Ibid.*) In 2005, the mandatory requirements were expanded slightly to include claims against judicial branch entities. (*Ibid.*) In light of this history and the current wording of section 910.4, it is unlikely that a local public entity, such as a school district, "can enforce use of its form or require a claimant to provide information other than that called for in [sections] 910 and 910.2." (Van Alstyne et al., Cal. Government Tort Liability Practice, *supra*, § 6.9, p. 6-11.)

Based on the reference in section 910.4 to "claims against the state or a judicial branch entity" and the fact that Clovis Unified is not a state or judicial entity, we conclude Students' failure to use Clovis Unified's claim form until June 2018 did not violate any requirement in section 910.4. Consequently, Students' November 1, 2017 letter might have constituted a claim under the Government Claims Act.

We note the self-evident advantage of using a claim form approved by a local public entity is that the claimant's intent to present a claim under the Government Claims Act is readily apparent from the use of the form. In comparison, use of a written document other than the entity's approved claim form raises a question about whether that document is intended to be a claim under the Government Claims Act or is intended to be something else. The drafter of the document can easily resolve this question by explicitly stating it is a claim under the Government Claims Act. For example, as suggested in a practice guide, a claimant might create a document with a caption similar to a pleading filed in superior court with the title "CLAIM FOR PERSONAL INJURIES (GOVT C §910)." (Van Alstyne et al., Cal. Government Tort Liability Practice, *supra*, § 6.8, pp. 6-8 to 6-9 [example of claim form for presentation to governing board of local public entity].) The question is less easily resolved when, as in the present case, the

purported claim document contains no reference to the Government Claims Act or any of its sections.

C. Deficiencies in Students' Letters

Students' November 1, 2017 letter and January 19, 2018 letter did not mention the Government Claims Act, did not cite any section of the act, did not threaten a lawsuit, and did not claim monetary damages. The trial court found nothing in the November 1, 2017 letter put Clovis Unified on notice that Students' complaints would rise beyond an administrative action. In addition, the court found the January 19, 2018 letter asked Clovis Unified "to state its intentions 'to avoid further action being taken to have the issues addressed,' but 'further action' was never defined."

These findings are supported by substantial evidence, which consists of the letters themselves and the contents of Students' "Complaint Forms" and 29-page attachment served on June 25, 2018. Thus, the trial court did not err in deciding a question of fact.

Alternatively, if the question of interpretation and the existence of a "claim as presented" for purposes of sections 910.8 and 911 is subject to independent review on appeal, we independently reach the same conclusions as the trial court. Specifically, we conclude an objectively reasonable school district would not interpret the letters as a "claim as presented" under the Government Claims Act. (§§ 910.8, 911; see *Green v. State Center Community College Dist.* (1995) 34 Cal.App.4th 1348, 1358–1359 [counsel's letter to district did not convey the assertion of a compensable claim that would result in litigation if not satisfied].) As a result, the November 1, 2017 letter, whether or not supplemented by the January 19, 2018 letter, did not trigger the district's duty to consider and respond to the claim in accordance with procedural requirements imposed by the Government Claims Act. (See Van Alstyne et al., Cal. Government Tort Liability Practice, *supra*, § 6.45, p. 6-42 [claims that trigger public entity's duty to give notice of defects].)

11.

The foregoing interpretation also reflects our determination that the letters do not substantially comply with the content requirements for a claim because the letters do not state the amount claimed in accordance with the requirement in subdivision (f) of section 910. When "the amount claimed exceeds $10,000, the amount sought is not to be specified in the claim, but the claim must indicate whether it would be a limited civil case." (Van Alstyne et al., Cal. Government Tort Liability Practice, *supra*, § 6.6, p. 6-7.) Students' letters did not state the amount of damages sought was under or over $10,000 and did not "indicate whether the claim would be a limited civil case." (§ 910, subd. (f).) As a result, Students' letters are comparable to the letter in *Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071. In *Loehr,* the "letter was merely a demand that the Board [of Trustees of the community college district] reinstate plaintiff as superintendent of the district or face possible legal action. The only mention of damages appears as a passing reference to the availability of such relief under the federal Civil Rights Act. Nowhere in the letter is there a claim for money damages, nor, for that matter is there even an estimate of the amount of any prospective injury, damage or loss." (*Id*. at p. 1083.) The Second District concluded plaintiff's letter "fails to satisfy the test of substantial compliance and thus cannot be considered a claim for damages within the meaning of the Government [Claims Act]." (*Ibid*.) The same holds true for Students' letters. The omission of information required by subdivision (f) of section 910 about the amount of damages claims prevent the letters from substantially complying with the claim presentation requirement.

To summarize, Students' letters did not qualify as a "claim as presented" and, as a result, did not trigger Clovis Unified's statutory duty to provide notice of the defects in the claim. (§§ 910.8, 911.) Also, the letters did not substantially comply with the content requirements of section 910.2.

II.     RELIEF FROM CLAIM PRESENTATION REQUIREMENTS

A.      Standard of Review

An order denying a section 946.6 petition for relief from the claim presentation requirements in the Government Claims Act is an appealable order.  (*DeVore v. Department of California Highway Patrol* (2013) 221 Cal.App.4th 454, 459.)  The superior court's denial of such a petition is reviewed for an abuse of discretion.  (*Id*. at p. 460.)

Abuse of discretion is not a unified standard but varies according to the type of ruling under review.  (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.)  "The trial court's findings of fact are reviewed for substantial evidence."  (*Ibid*.)  Thus, "the abuse of discretion standard does not allow trial courts to make express or implied findings of fact without sufficient evidentiary support."  (*County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 316.)

When a trial court's ruling decides legal issues, such as jurisdictional questions and matters of statutory interpretation, the appellate court conducts an independent review of those determinations.  (*Haraguchi v. Superior Court*, *supra*, 43 Cal.4th at p. 712.)  Thus, "the abuse of discretion standard does not allow trial courts to apply an incorrect rule of law."  (*County of Kern v. T.C.E.F., Inc.*, *supra*, 246 Cal.App.4th at p. 316.)

"[W]hen the challenged determination involves the trial court's weighing of the interrelated factors, the result of that weighing process generally will be upheld on appeal so long as the trial court did not exceed the bounds of reason or contravene the uncontradicted evidence."  (*County of Kern v. T.C.E.F., Inc.*, *supra*, 246 Cal.App.4th at p. 316.)  Stated another way, when the applicable rule of law grants discretion to the trial court, the abuse of discretion standard measures whether the trial court's decision falls within the permissible range of options defined by the applicable legal criteria.  (*Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089.)

13.

B.    Agreement to Extend Time

Students contend Clovis Unified extended the time to bring an action under the Government Claims Act through two promises to (1) investigate the allegations raised in their letters and (2) provide a written response or report by mid-February 2018. Students cite subdivision (b) of section 912.4, which states that a "claimant and the board may extend the period within which the board is required to act on the claim by written agreement .…"

The correspondence cited by Students to support their argument does not explicitly state the parties agreed to an extension, does not cite section 912.4, contains no reference to the Government Claims Act (as described earlier), and makes no reference to Clovis Unified's obligation to act upon a claim. Accordingly, it is not objectively reasonable to interpret the correspondence as a "written agreement" for an extension under section 912.4.

The trial court rejected Students' argument that there was an agreement for an extension. First, the court stated the argument was inappropriate because it was not included in the petition and Clovis Unified had no opportunity to respond. Second, the court determined the argument lacked merit because it depended upon a finding that the November 1, 2017 letter constituted a claim. The court had determined the letter did not constitute a claim, rejecting the argument that the letter substantially complied with the claim presentation requirements. As discussed earlier, the court correctly determined the November 1, 2017 letter did not substantially comply with the requirements of the Government Claims Act. In addition, it correctly determined there could be no agreement to extend the response period without an underlying claim.

To the extent the trial court impliedly determined Students did not carry their burden of proving the existence of such an extension agreement, Students have not demonstrated " 'the evidence compels a finding in favor of the[m] as a matter of law.' " (*Vierira Enterprises, Inc. v. McCoy* (2017) 8 Cal.App.5th 1057, 1074.) Under that

14.

standard, "the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' [Citation.]" (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528; see *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838; *Valero v. Board of Retirement of Tulare County Employees' Assn.* (2012) 205 Cal.App.4th 960, 965 [it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the order or judgment].)

C.     Equitable Estoppel

Students contend the doctrine of equitable estoppel applies and renders the June 25, 2018 written complaint timely.

*1.     Elements of Equitable Estoppel*

Equitable estoppel arises where a prospective defendant induces a prospective plaintiff to forgo protecting his or her rights, the plaintiff subsequently attempts to assert the rights, and the defendant raises a defense based on the plaintiff's lapse. (30 Cal.Jur.3d (2013) Estoppel and Waiver, § 3, p. 824.) Equitable estoppel involves some degree of fault or blame on the part of the defendant to be estopped. (*Ibid*.) "[T]he doctrine will not be applied against one who is blameless." (*Ibid*.)

Our Supreme Court has described California's doctrine of equitable estoppel as containing four or five elements. (See 30 Cal.Jur.3d, *supra,* Estoppel and Waiver, § 7, pp. 833–834.) In *Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297 (*Driscoll*), the court stated: "Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury."

15.

(*Id.* at p. 305; see *J.M, supra,* 2 Cal.5th at p. 656 [quoting *Driscoll*'s version of the elements].)  "The doctrine of equitable estoppel may be applied against the government where justice and right require it."  (*Driscoll, supra,* at p. 305; see 30 Cal.Jur.3d, *supra,* Estoppel and Waiver, § 5, pp. 826–829 [availability against governmental entities].)

In comparison, *Simmons v. Ghaderi* (2008) 44 Cal.4th 570 described the five-element version of the doctrine:  "A valid claim for equitable estoppel requires: (a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it.  (13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 191, pp. 527–528.)  There can be no estoppel if one of these elements is missing.  (*Id.* at p. 528.)" (*Simmons*, *supra*, at p. 584.)

For purposes of this appeal, we will use the description of the elements set forth in *Driscoll* and quoted in *J.M.* because (1) *J.M.* involved the assertion of estoppel against a school district and (2) it is the version of the doctrine applied by the trial court.  "It is well settled that a public entity may be estopped from asserting the limitations of the claims statute where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act."  (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 445.)

The requirement for an *affirmative* representation or act may be satisfied by a public entity's misleading statements relating to the claims procedure.  (See *Santos v. Los Angeles Unified School Dist.* (2017) 17 Cal.App.5th 1065, 1075–1076.)  Also, estoppel may be found where the public entity engaged in calculated conduct or concealed facts that induced the plaintiff to forgo action required by the claims statute, such as filing a claim or bringing the lawsuit within the statutory time.  (*Ibid.*)

A plaintiff's reliance upon the defendant's conduct must be reasonable under the circumstances.  (*Santos, supra,* 17 Cal.App.5th at p. 1076.)  Equitable estoppel, with its

16.

elements involving knowledge, intent and reasonable reliance, normally presents questions of fact for the court to decide. (*Ibid.*) The applicable standard of proof is a preponderance of the evidence. (*Ibid.*) When the evidence is not in conflict and is susceptible to only one reasonable interpretation, the existence of estoppel is a question of law. (*Driscoll*, *supra*, 67 Cal.2d at p. 305.)

We note the application of equitable estoppel could occur at two separate levels of the claim presentation process. The first is the presentation of a timely claim. The second is the submission of a timely application for leave to present a late claim. Here, Students contend equitable estoppel renders their June 25, 2018 "complaint" a timely claim. They do not contend the doctrine renders their application for leave to present a late claim timely. Accordingly, we address equitable estoppel only as it relates to the presentation of a timely claim.

### 2. *The Untimely Claim*

Applying the six-month period in section 911.2, subdivision (a) to the accrual date of June 9, 2017, Students were required to present their written claim to Clovis Unified on or before December 9, 2017. Before that date, Students' delivered their November 1, 2017, letter to Clovis Unified. In response, an attorney representing Clovis Unified telephoned Students' attorney and advised that Clovis Unified would not be able to address the issues raised until after January 1, 2018. As a result, the question presented is whether that telephone response should equitably estop Clovis Unified from asserting Students failed to present a timely claim.

The first element of estoppel states "the party to be estopped must be apprised of the facts." (*Driscoll*, *supra*, 67 Cal.2d at p. 305.) Here, Clovis Unified was not informed that Students intended to present a claim for money damages or that they intended their November 1, 2017 letter to be such a claim. Thus, Clovis Unified was not apprised of all the facts material to Students' estoppel theory. This alone is sufficient to prevent

17.

equitable estoppel from being applied to bar Clovis Unified from asserting Students failed to present a claim within the six-month period.

The second element of estoppel addresses whether the public entity intended that its conduct be acted upon or, alternatively, whether the public entity acted in a way that the Students had a right to believe the public entity intended its conduct to be acted upon by Students. (*Driscoll*, *supra*, 67 Cal.2d at p. 305.) Here, there is no evidence to suggest the telephone call from Clovis Unified's attorney was intended to prevent or deter Students from filing a timely claim for damages. Furthermore, there is no evidence showing Students and their attorney had a right to believe Clovis Unified intended them to forgo filing a claim for damages until after Students received a response to their letter. Instead, the practical effect of the telephone call was to inform Students that the request for an investigation and audit would not be addressed until after the six-month period for presenting a claim for damages had expired.

The third element of estoppel requires the Students to "be ignorant of the true state of facts." (*Driscoll*, *supra*, 67 Cal.2d at p. 305.) Students contend that they believed their November 1, 2017 letter was sufficient to qualify as a claim presented for purposes of the Government Claims Act. For purposes of this appeal, we assume without deciding that Students' assertion of fact about their belief is accurate.

The fourth element of estoppel requires the Students to have reasonably relied on the conduct of Clovis Unified to their injury. (*Driscoll*, *supra*, 67 Cal.2d at p. 305; *Santos, supra,* 17 Cal.App.5th at p. 1076 [reliance must have been reasonable under the circumstances].) In this case, the injury was Students' failure to present a claim within the six-month period or, alternatively, reach a written agreement with Clovis Unified to extend the claim period (see § 912.4, subd. (b)). We conclude it was not reasonable for Students to rely on their November 1, 2017 letter as presenting a claim for damages under the Government Claims Act. Because no claim for damages was presented, it was not reasonable for Students to rely on Clovis Unified's response stating their letter would not

18.

be addressed until the new calendar year as extending the time to present a claim for damages. The reasonable response would have been to realize their issues would not be addressed at the administrative level before the expiration of the six-month claim period and to react by presenting a claim on or before December 9, 2017, or negotiating a written extension. Stated from another perspective, the telephone response by Clovis Unified's attorney did not place some degree of fault or blame on Clovis Unified. (30 Cal.Jur.3d, *supra*, Estoppel and Waiver, § 3, p. 824.)

To summarize, the trial court did not commit factual or legal error when it determined Clovis Unified was not equitably estopped from asserting Students failed to present a claim within the six-month period. (§ 911.2, subd. (a).)

C. Equitable Tolling

*1.    Basic Legal Principles*

On appeal, Students contend equitable tolling applies and renders the June 25, 2018 written "complaint" a timely claim. "Equitable tolling and equitable estoppel are distinct doctrines." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 383.) Tolling involves the point in time that a limitations period begins to run and the circumstances that may suspend the running of the limitations period. (*Ibid*.) Equitable tolling requires a showing of three elements: (1) timely notice to the defendant, (2) a lack of prejudice to the defendant, and (3) reasonable and good faith conduct on the part of the plaintiff. (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 102.) The policy underlying equitable tolling favors relieving a plaintiff from the bar of a limitations statute when, possessing several legal remedies, the plaintiff reasonably and in good faith pursues a remedy designed to lessen the extent of his injuries or damages. (*J.M.*, *supra*, 2 Cal.5th at p. 657.)

In *J.M.*, our Supreme Court stated "[t]he doctrine of equitable tolling may also apply to limitation periods imposed by the claims statutes." (*J.M.*, *supra*, 2 Cal.5th at p.

657.) In that case, the plaintiff was a high school football player who suffered a concussion. (*Id*. at p. 651.) His personal injury action accrued on October 31, 2011, when he was diagnosed with double concussion syndrome. (*Ibid*.) He failed to file a timely claim within the six months required by section 911.2, subdivision (a). On October 24, 2012, within a year of the accrual of his claim, he submitted an application to present a late claim to the school district; the application was timely under section 911.4. (*J.M., supra,* at pp. 651–652.) The school district took no action and, as a result, the application was deemed denied on December 8, 2012, by operation of section 911.6, subdivision (c). After an application is denied or deemed denied, the next step for the plaintiff attempting to comply with the Government Claims Act is to file a petition to present a late claim under section 946.6. "The petition shall be filed within six months after the application to the board is denied or deemed to be denied pursuant to Section 911.6." (§ 946.6, subd. (b).) The plaintiff in *J.M.* failed to meet this limitations period because he did not file a petition in court until October 28, 2013. (*J.M.*, *supra*, at p. 652.) The trial court rejected the petition because it was late. (*Ibid.*)

In *J.M.*, our Supreme Court characterized the six-month period in subdivision (b) of section 946.6 for filing a petition as a statute of limitations. (*J.M.*, *supra*, 2 Cal.5th at p. 653.) Because that time period was characterized as a statute of limitation, the doctrine of equitable tolling could be applied to suspend the running of the period. (*Id*. at p. 657.) Next, the court considered whether the facts presented justified tolling that six-month period and addressed whether the high school student had pursued an alternate remedy. (*J.M.*, *supra*, 2 Cal.5th at p. 657.) The high school student referred to the complaint he filed simultaneously with his petition. The court rejected this argument on multiple grounds. One ground was that the six-month period for filing the petition for relief had already expired by the time the complaint was filed. (*Id*. at p. 658.)

The Supreme Court did not treat the failure to pursue an alternate remedy as decisive, stating pursuit of such a remedy is not always required for equitable tolling

because the doctrine is flexible and seeks to ensure fundamental practicality and fairness. (*J.M.*, *supra*, 2 Cal.5th at p. 658.) " 'As with other general equitable principles, application of the equitable tolling doctrine requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the [Government] Claims Act limitations statute.' " (*Ibid*.) Based on the facts before it, the court determined the high school student failed to establish an injustice, stating: "He simply failed to comply with the claims statutes, missing an easily ascertainable deadline that has been in place for over 50 years. [Citation.] If oversight of such plain rules justified equitable relief, the structure of the Government Claims Act would be substantially undermined, and its provisions for timely notice to public entities subverted." (*Ibid*.)

### 2. *Equitable Tolling Does Not Apply*

First, we consider whether equitable tolling can be applied to the six-month period in section 911.2 for presenting a timely claim to a public entity. This issue can be rephrased as whether that six-month period is a statute of limitations.

Not all deadlines set forth in the Government Claims Act are characterized as statutes of limitation. In *J.M.*, the court addressed the six-month period in section 946.6, subdivision (b) for filing a petition in court and characterized it as a statute of limitations. In contrast, "the doctrine of equitable tolling cannot be invoked to suspend section 911.2's six-month deadline for filing a prerequisite government claim." (*Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1121.) "[T]he six-month period of section 911.2 is not a statute of limitations [citation] to which tolling rules might apply." (*Ibid*.) Based on this holding, we conclude equitable tolling cannot be applied to extend the six-month period in section 911.2 for presenting a claim to the public entity.

### 3. *Elements of Equitable Tolling Are Not Satisfied*

Second, even if we assume for purposes of this appeal that the six-month period in section 911.2 is subject to equitable tolling, and address whether Students have satisfied those requirements, the elements of equitable tolling are not satisfied. As described in the discussion of equitable estoppel, their conduct in failing to present a timely claim within six months of the accrual of their causes of action was not reasonable under the circumstance. Like the high school student in *J.M.*, Students simply failed to comply with the claim presentation requirements. (*J.M.*, *supra*, 2 Cal.5th at p. 658.) Accordingly, the elements of equitable tolling have not been satisfied in this case and the doctrine of equitable tolling does not render Students' June 25, 2018 written complaint timely.

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

FRANSON, J.

WE CONCUR:

LEVY, Acting P.J.

PEÑA, J.