Filed 4/26/21  Foster v. Kaweah Delta Medical Center CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RICKY TYRONE FOSTER,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>KAWEAH DELTA MEDICAL CENTER,<br><br>Defendants and Respondents. | F080927<br><br>(Super. Ct. No. VCU280726)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the opinion filed herein on March 30, 2021, be modified as follows:

1.      On page 20, insert the following heading and paragraphs after the second paragraph beginning "Based on the contents" and immediately before the "DISPOSITION":

> *4.      Equitable Estoppel*
>
> Foster's petition for rehearing contends his state law medical malpractice cause of action is not time barred because Kaweah is equitably estopped from asserting the limitations of the claim statute.  Foster contends Kaweah's acts and omissions, including the failure to respond to his request for information about an appeal, hindered or prevented his filing

of a timely claim under the Government Claims Act.  As explained below, we conclude Foster is unable to plead and prove the reasonable reliance element of equitable estoppel in a manner that justifies his failure to present a timely claim *and* his failure to seek leave to file a late claim.

"Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305 (*Driscoll*); *J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 656.) A plaintiff's reliance upon the defendant's conduct must be reasonable under the circumstances.  (*Santos v. Los Angeles Unified School Dist.* (2017) 17 Cal.App.5th 1065, 1076.)

The doctrine of equitable estoppel may be applied against a public entity where justice and right require it.  (*Driscoll*, *supra*, 67 Cal.2d at p. 305.)  Thus, "a public entity may be estopped from asserting the limitations of the claims statute where its agents or employees have prevented or deterred the filing of a timely claim by some *affirmative act*."  (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 445, italics added.)

First, we recognize Bermudez's letter may have caused Foster to believe he needed to submit a claim or complaint to the Medical Board to comply with the claim presentation requirements of the Government Claims Act.  The December 28, 2018 letter from the Medical Board stating his "complaint is closed" would have constituted written notice of the rejection of his claim for purposes of Government Code section 911.6.  If that rejection is treated as the rejection of a claim deemed by estoppel to have been properly submitted under the Government Claims Act, then Foster would have had six months to file his lawsuit.  (Gov. Code, § 945.6, subd. (a).)  That six-month period expired on June 28, 2019.  Consequently, even with the benefit of equitable estoppel, Foster's September 2019 complaint would not have been timely filed.  As a result, if Kaweah is equitably estopped from asserting the complaint to the Medical Board was not the presentation of a claim for purposes of the Government Claims Act, Foster still did not timely file his lawsuit within six months after the Medical Board rejected his complaint.

Second, we consider the question of how long Foster could reasonably rely on Kaweah's failure to respond to his request for information about pursuing an appeal.  Foster waited about two months

2.

before he submitted a complaint to the Medical Board. Thus, it is reasonable to infer from Foster's actions that he relied on Kaweah's letter and its statement regarding information about an appeal for two months. Because this appeal comes to us at the pleading stage, we infer Foster could allege that two-month reliance period was reasonable. The two-month delay, however, would not have affected the time Foster took to file his lawsuit *after receiving the Medical Board's rejection notice in December 2018*. In other words, any misrepresentation by Kaweah would not have reasonably caused Foster to delay in filing his lawsuit after the Medical Board rejected his complaint.

Third, Foster's equitable estoppel theory does not address other mandatory procedural requirements of the Government Claims Act and provide an excuse for not complying with those requirements. When a claim is not timely presented, Government Code section 911.4, subdivision (a) requires the claimant to submit a written application to the public entity for leave to present a late claim. Next, if the public entity denies such an application, the claimant's last recourse is to petition the superior court for relief from the claim presentation requirement. (*J.M. v. Huntington Beach Union High School Dist., supra,* 2 Cal.5th at pp. 653–656.) A petition for relief from the claim filing requirements "shall be filed within six months after the application to the board [for leave to file a late claim] is denied or deemed to be denied pursuant to Section 911.6." (§ 946.6, subd. (b).) Foster's theory of equitable estoppel does not explain how affirmative acts by Kaweah reasonably prevented him from completing these required steps.

Consequently, Foster's theory of equitable estoppel is not sufficient to excuse his compliance with the claim presentation requirements of the Government Claims Act *and* render his complaint timely within the statutes of limitation.

There is no change in the judgment.

Appellant's petition for rehearing filed on April 13, 2021, is hereby denied.

FRANSON, Acting P.J.

WE CONCUR:


PEÑA, J.

3.

SMITH, J.

Filed 3/30/21  Foster v. Kaweah Delta Medical Center CA5 (unmodified opinion)

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RICKY TYRONE FOSTER,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>KAWEAH DELTA MEDICAL CENTER,<br><br>Defendant and Respondent. | F080927<br><br>(Super. Ct. No. VCU280726)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Bret D. Hillman, Judge.

Ricky Tyrone Foster, in pro. per., for Plaintiff and Appellant.

Salinas Law Group, Inc., and Richard S. Salinas for Defendant and Respondent.

-ooOoo-

Appellant Ricky Tyrone Foster, a self-represented prison inmate, sued Kaweah Delta Health Care District (Kaweah) and alleged Kaweah was deliberately indifferent to his serious medical condition, inadequately trained its personnel, and failed to properly

---

[*]     Before Franson, Acting P.J., Peña, J. and Smith, J.

diagnose and treat his seven broken ribs. Kaweah filed a demurrer, contending Foster failed to allege compliance with, or an excuse from complying with, the claim presentation requirements of the Government Claims Act (Gov. Code, § 810 et seq.) and Foster's action was time-barred under the statute of limitations applicable to medical malpractice actions (Code Civ. Proc., § 340.5). The trial court sustained the demurrer without leave to amend. Foster appealed.

Foster's complaint stated a cause of action under the federal Civil Rights Act, 42 United States Code section 1983 (section 1983),[1] and the principles set forth in *Monell v. Department of Social Services* (1978) 436 U.S. 658 (*Monell*) and *City of Canton v. Harris* (1989) 489 U.S. 378 (*Harris*). The claim presentation requirements of the Government Claims Act do not apply to causes of action under section 1983. Therefore, any failure by Foster to comply with those requirements is not a valid ground for sustaining the demurrer to his section 1983 cause of action.

The statute of limitations applicable to Foster's section 1983 cause of action is the two-year period applied to personal injury actions. (§ 335.1.) As an inmate serving a life sentence with the possibility of parole, Foster is eligible for the two-year tolling period set forth in section 352.1, subdivision (a). Furthermore, the exception contained in subdivision (b) of section 352.1 does not apply to federal civil rights causes of action under section 1983. As a result, the combination of sections 335.1 and 352.1 allowed Foster to file his federal cause of action within four years after it accrued. Here, Foster easily meets the deadline as his ribs were broken in August 2017 and his lawsuit was filed in 2019. Consequently, Foster's section 1983 cause of action is not barred by the statute of limitations.

We therefore reverse the judgment of dismissal.

---

[1]  Except for section 1983, all unlabeled statutory references are to the Code of Civil Procedure.

**FACTS**

In 1994, Foster was convicted of various serious offenses relating to a carjacking. (*People v. Foster* (1995) 34 Cal.App.4th 766, 768.)  The jury found Foster used a firearm during the commission of the offenses.  Foster "was sentenced to a total unstayed prison term of life with the possibility of parole plus 12 years." (*Id.* at p. 769.)  In 1995, we affirmed Foster's conviction and sentence. (*Id.* at p. 776.)  The details about Foster's sentence are relevant to the application of section 352.1, which tolls the running of the statute of limitations for up to two years for certain inmates.

On August 6, 2017, Foster was held by the California Department of Corrections and Rehabilitation at the Corcoran State Prison.  Foster, who is black, was involved in a fight with prisoners classified as "Other."  Foster received some superficial injuries and was restrained on a hospital gurney.  While he was strapped to the gurney, prison officials allowed an "Other" prisoner who had been involved in the fight to attack the defenseless Foster.  Foster alleges the prison officials allowed the attack as retaliation for Foster filing inmate grievances against prison officials and participating in an Internal Affairs investigation of prison officials.  During the attack, the gurney fell over and Foster landed on top of a metal box, which he alleges caused him great pain.

Plaintiff was transported to Kaweah Delta Medical Center, a hospital in Visalia operated by Kaweah.  At the hospital, Foster was seen by defendant Kenny Derkang Lee, M.D., and a C.T. scan and x-rays were taken.  Foster was told that no fractures were found on the chest x-rays or the C.T. scan.  Foster was experiencing a great deal of chest pain and demanded a second medical opinion.  Dr. Lee denied this request, despite Foster's chest being noticeably swollen, his difficulty in breathing, and his crying from the pain.

On August 9, 2017, Kaweah discharged Foster and he was returned to Corcoran State Prison, where he was placed in administrative segregation.  The appellate record includes reports generated by California Correctional Health Care Services for

3.

examinations of Foster. The August 29, 2017 report from Corcoran State Prison states six x-rays of Foster's "chest and rib cage were acquired" and showed a minimally displaced right 10th rib fracture. The report for x-rays taken during an October 9, 2017 exam at Calipatria State Prison showed "[h]ealing bilateral rib fractures are present with fractures of the anterior arch of the right fourth through seventh ribs and fractures of the anterior arcs of the left fourth through sixth ribs." The report for x-rays taken during a December 4, 2017 exam at Calipatria State Prison stated: "Healed/healing right-side rib fractures with no new deformity identified. Known left-sided rib fractures are not a conspicuous on the present exam, suggestive of healed deformity." After the heading labeled "IMPRESSION," the report stated: "Chronic fracture deformities with no acute osseous abnormality."

*Office of Patient Experience*

Miriam Y. Bermudez of Kaweah's Office of Patient Experience sent Foster a letter dated May 25, 2018, which began: "This 2nd letter is in follow-up to the letter sent to you on 03/29/2018. We apologize that you were disappointed with our physicians care during your hospital stay. Your concerns were forwarded to the Medical Staff Office for review." The letter informed Foster that two of Kaweah's radiologists had conducted a review and reported that (1) no fractures were found evident on the chest x-ray and (2) the C.T. scan showed very subtle irregularities of the right anterior lateral fourth and fifth ribs that could represent subtle incomplete or healing fractures. The letter concluded that the abnormalities referred to in Foster's letter were not found in the x-rays and scan done during Foster's August hospital stay.

The letter also informed Foster of his right to file a formal complaint with the Medical Board of California and provide telephone numbers and the mailing address of the board's "Central Complaint Unit." The last sentence of the letter stated: "If you are not satisfied with our response, please contact me within 20 days of this letter in order to

file an appeal." Although Foster wrote to Bermudez, he received no further communications from Kaweah.

*Medical Board of California*

Because he received no appeal assistance from Bermudez, Foster submitted a complaint about Dr. Lee's treatment to the Medical Board of California in July 2018. In August 2018, the Medical Board sent Foster an initial letter acknowledging receipt of his complaint and a second letter stating he needed to complete and sign certain forms authorizing the release of medical information. In October 2018, the Medical Board sent Foster a letter stating it had received all the records required for its review and those documents had been forwarded to a medical consultant for review. On December 28, 2018, the Medical Board sent Foster a letter stating it had completed its review of his complaint against Dr. Lee and it was "unable to meet the burden of proof required to pursue administrative action." Accordingly, the letter stated Foster's "complaint is closed."

*Tulare County's Board of Supervisors*

On September 20, 2019, Foster filed a claim with the Board of Supervisors of the County of Tulare. On October 4, 2019, the County's Risk Management Division sent Foster a formal denial of his claim. The cover letter stated "the County of Tulare is not an appropriate defendant" because Dr. Lee was not a County employee and the County has no jurisdiction over Kaweah. The letter also advised Foster that if he pursued litigation against the County it might seek attorney fees and sanctions against him.

## PROCEEDINGS

On September 10, 2019, Foster signed a pleading titled "CIVIL RIGHTS COMPLAINT BY A PRISONER." Nothing in the record shows when Foster delivered the complaint to prison officials for mailing to the Tulare County Superior Court. On October 7, 2019, Foster's complaint was filed by the court.

5.

A section in the preprinted complaint addressed administrative remedies. Item 5.d asked: "If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not." On the line that followed, Foster typed, "defendant's are not prison official's, and my injury's/case is against a public hospital." In the next item, Foster typed: "I filed both: 1.) Medical Board Claim; and 2.) Tort Claim. as my claim's are not prison related per-se. Board of Supervisor."

In December 2019, Kaweah filed a demurrer, contending Foster failed to allege compliance with, or an excuse from complying with, the claim presentation requirements of the Government Claims Act (Gov. Code, § 810 et seq.). Kaweah also asserted the action was time-barred under the statute of limitations applicable to medical malpractice actions (Code Civ. Proc., § 340.5).

On January 28, 2020, after opposition and reply papers were filed, the trial court held a hearing on the demurrer. Foster and defense counsel appeared by CourtCall. After hearing argument, the court took the matter under submission. On January 29, 2020, the trial court signed and filed a four-page "RULING ON DEFENDANT'S DEMURRER" sustaining Kaweah demurrer to Foster's complaint without leave to amend. On February 13, 2020, the court filed an order dismissing the case with prejudice. In March 2020, Foster filed a timely appeal.

In October 2020, after Foster filed his opening brief, this court sent the parties a briefing letter directing them to address 13 questions enumerated in the letter. After the respondent's brief and appellant's reply brief were filed, we sent a second briefing letter asking Kaweah to address five specific questions in a sur-reply brief.

## DISCUSSION

### I. DEMURRERS AND STANDARD OF REVIEW

Kaweah's demurrer raised two grounds. First, Kaweah asserted Foster had failed to allege facts sufficient to state a cause of action because he failed to allege an essential

6.

element—namely, compliance with the claims presentation requirements of the Government Claims Act. Second, Kaweah contended Foster's medical malpractice cause of action was barred by the applicable statute of limitations. In light of these contentions, we consider the principles addressing how each of these grounds may be raised by demurrer and the corresponding standard of appellate review.

A.     Grounds for Demurrer

1.     *Failure to Plead a Cause of Action*

A complaint must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language." (Code Civ. Proc., § 425.10.) The facts needed to properly plead a cause of action are referred to as the essential elements of the cause of action. The essential elements are determined by the substantive law that defines the cause of action. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 6:121, p. 6-36.) The facts needed to satisfy these elements are the facts upon which liability depends. (*Id.* ¶ 6:123, p. 6-38.) Generally, when a cause of action falls within the scope of the Government Claims Act, submission of a claim is a condition precedent to maintaining a tort action and, thus, compliance is treated as an essential element of the cause of action. (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239–1240.)

When a complaint "does not state facts sufficient to constitute a cause of action," a defendant may raise that objection by filing a demurrer. (Code Civ. Proc., § 430.10, subd. (e).) Determining whether a pleading alleges facts sufficient to constitute a cause of action is a question of law. (*Neilson v. City of California City* (2005) 133 Cal.App.4th 1296, 1305.)

Appellate courts reviewing an order sustaining a general demurrer independently determine whether the pleading "alleges facts sufficient to state a cause of action under any legal theory." (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)

7.

Appellate courts "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) The demurrer is treated as admitting all material facts properly pleaded, but does not admit the truth of contentions, deductions or conclusions of law. (*Ibid.*) The pleader's contentions or conclusions of law are not controlling because appellate courts are obligated to independently decide questions of law without deference to the legal conclusions of the pleader or the trial court. (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1242.)

### 2. Statute of Limitations Defense

The grounds listed in section 430.10 are not the only bases for a demurrer. Under section 430.30, subdivision (a), when "any ground for objection to a complaint … appears on the face thereof, or from any matter of which the court is required to or may take judicial notice, the objection on that ground may be taken by a demurrer to the pleading." The statute of limitations, while characterized as an affirmative defense, also is a "ground for objection to a complaint" for purposes of section 430.30 and, therefore, may be raised in a demurrer. (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 493.)

Generally, an order sustaining a demurrer on statute of limitations grounds is subject to independent review on appeal. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) The untimeliness of the lawsuit must clearly and affirmatively appear on the face of the complaint and matters judicially noticed before an appellate court will affirm an order sustaining the demurrer. (*Ibid.*) Allegations in the complaint showing the claim *might* be barred are not enough. (*Marshall v. Gibson*, *Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403.)

### B. Leave to Amend

A trial court's decision to sustain a demurrer without leave to amend is subject to review for an abuse of discretion. "[I]t is an abuse of discretion to sustain a demurrer

8.

without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) The plaintiff has the burden of demonstrating a reasonable possibility of curing the defect. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

In making the required demonstration, a plaintiff is not limited to the matters presented to the trial court. Code of Civil Procedure section 472c, subdivision (a) provides: "When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made." In *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, the Supreme Court interpreted this statute to mean: "The issue of leave to amend is always open on appeal, even if not raised by the plaintiff." (*Id*. at p. 746, citing *Aubry v. Tri-City Hospital Dist.*, *supra*, 2 Cal.4th at p. 971.)

## II.     SECTION 1983 CAUSE OF ACTION

Section 1983 states, in pertinent part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...."

### A.     Foster's Complaint

Foster's 11-page complaint consisted of a preprinted form with blanks filled in by typewriter and seven additional typed pages. On its first page, Foster marked a box indicating the court had jurisdiction over the action pursuant to "28 U.S.C. § 1343(a); 42 U.S.C. § 1983." In a part of the complaint labeled "<u>INTRODUCTION</u>," Foster stated: "This is a civil rights action which is seeking money damage's and declaratory judgment

9.

under 42 U.S.C. § 1983." The same paragraph referred to a deliberate indifference to a serious medical condition, mistreatment, an unnecessary and wanton infliction of pain, unprofessional medical misconduct, "all in violation of the Eighth and Fourteenth Amendment to the United States Constitution." The heading for the first and only cause of action included the following: "(42 U.S.C.§ 1983, 8th Amendment to the U.S. Const.)" Under that heading, Foster described many acts as violations of "the 8th amendment of the United States Constitution" and stated Kaweah's "wrongful actions herein are in violation of 42 U.S.C.§ 1983 because they have intentionally and prejudicially deprived plaintiff of rights, benefits and privileges secured by the United States Constitution."

Foster's complaint includes many references to section 1983 and violations of his constitutional rights. Giving his "complaint a reasonable interpretation, reading it as a whole and its parts in their context," there is no doubt that Foster was attempting to state a civil rights cause of action under section 1983. (*City of Dinuba v. County of Tulare*, *supra*, 41 Cal.4th at p. 865; see *Genesis Environmental Services v. San Joaquin Valley Unified Air Pollution Control Dist.* (2003) 113 Cal.App.4th 597, 599–600 [complaint that made no reference to § 1983 alleged sufficient facts to state a cause of action under that statute for a violation of the equal protection clause; Fifth Dist. reverses judgment of dismissal].)

### B. The Demurrer

Kaweah's demurrer and supporting papers did not mention section 1983. As a result, Kaweah did not address whether a section 1983 cause of action is subject to the claim presentation requirements of the Government Claims Act. Also, it did not address which statute of limitations applies to a section 1983 cause of action.

Like Kaweah's demurrer, the trial court's four-page ruling did not mention section 1983. The court identified Foster's legal theory by stating: "This is a medical negligence

10.

action against defendant Kaweah … based on … Foster's contention that he was injured as a result of the failure of Kaweah … to properly diagnose and treat broken ribs that [Foster] sustained on or about August 6, 2017, in an altercation at Corcoran State Prison."

The trial court concluded the claim for medical negligence was subject to the Government Claims Act and determined Foster did not properly allege compliance with the act's claim presentation requirements or an excuse for his noncompliance. The court also concluded the lawsuit was untimely under the one-year statute of limitations for medical malpractice action set forth in section 340.5. In concluding the lawsuit was untimely, the court determined the two-year tolling provision in section 352.1, subdivision (a) did not apply to Foster for two independent reasons. First, Foster was serving a life sentence and was not eligible for tolling. Second, under section 352.1, subdivision (b), the two-year tolling provision does not apply to an action brought against a public entity for which a claim must be presented in accordance with the Government Claims Act. The court determined Kaweah was such a public entity and, thus, Foster could not rely on the tolling provision in section 352.1.

C.      Issues Raised in this Appeal

Because Kaweah's demurrer and the trial court's ruling ignored Foster's federal civil rights claim, our October 2020 letter of briefing instructions asked the parties to address the following questions: (1) "Is Foster's civil rights cause of action under 42 U.S.C. section 1983 for deliberate indifference to a serious medical need subject to the claim presentation requirements of the Government Claims Act?" (2) Does the two-year tolling period in section 352.1 apply to a federal civil rights cause of action or, more specifically, does the exception in subdivision (b) of section 352.1 prevent the tolling provision from applying to Foster's civil rights cause of action? (3) For purposes of "section 1983, is Kaweah … a 'person' that can be held liable under the statute for a civil

11.

rights violation?"  The respondent's brief filed by Kaweah addressed each of these questions.

### 1.  Claim Presentation Requirements Do Not Apply

Kaweah responded to the first question by stating Foster's cause of action under section 1983 was not subject to the claim presentation requirements of the Government Claims Act.  We agree.  Section 1983 actions are not subject to the Government Claims Act.  (*California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 38.)  Consequently, any failure to comply with the act's claim presentation requirements does not bar Foster's section 1983 cause of action.  In other words, compliance with the Government Claims Act is not an essential element of a federal civil rights claim.

### 2.  Tolling of Statute of Limitations

In its respondent's brief, Kaweah argued, without citation to any case law, that the trial court correctly determined the two-year tolling provision in section 352.1 did not apply because Foster's lawsuit was against a public entity.  (§ 352.1, subd. (b).)  Subsequently, Kaweah filed a sur-reply brief conceding that "Foster is entitled to the benefit of two-years tolling provided in [section] 352.1 because his life sentence is not without the possibility of parole."

We agree that the two-year tolling afforded to certain prisoners by section 352.1 applies to Foster's section 1983 cause of action.  The statutory text creating the tolling provision reads:  "If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335), is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court *for a term less than for life*, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years."  (§ 352.1, subd. (a), italics added.)  This court has interpreted the statutory phrase "for a term less than for life" to mean only sentences for life *without* the possibility of parole.  (*Brooks v. Mercy Hospital*

12.

(2016) 1 Cal.App.5th 1, 7.) Because Foster was sentenced to a prison term of life *with* the possibility of parole, he is eligible for tolling under section 352.1, subdivision (a). Thus, the trial court erred by ignoring Foster's allegation that he "is serving life with the possibility of parole." In addition, it misconstrued the statute when it determined the statute of limitations was extended for up to two years only "when the inmate is serving a non-life sentence."

The trial court adopted two independent grounds for concluding tolling was not available. Accordingly, we also must consider the second ground, which raises the legal question of whether the exception set forth in subdivision (b) of section 352.1 applies to causes of action brought under section 1983. The statutory text in question reads: "This section does not apply to an action against a public entity or public employee upon a cause of action for which a claim is required to be presented in accordance with [the Government Claims Act]." (§ 352.1, subd. (b).) As concluded earlier, a section 1983 theory of liability is not "a cause of action for which a claim is required to be presented in accordance with [the Government Claims Act]." (§ 352.1, subd. (b).) Accordingly, the exception does not apply to Foster's section 1983 causes of action. (See *Ellis v. City of San Diego* (9th Cir. 1999) 176 F.3d 1183, 1190 [state law claims were untimely because two-year tolling under § 352.1 did not apply, but federal civil rights claim was timely]; *Jones v. Blanas* (9th Cir. 2004) 393 F.3d 918, 927 [§ 1983 claims are governed by the forum state's statute of limitations for personal injury claims, including state law regarding tolling; § 352.1 does not cover civil detainees]; *Martinez v. Gomez* (9th Cir. 1998) 137 F.3d 1124.)

Consequently, the statute of limitations applicable to Foster's section 1983 cause of action was tolled for two years pursuant to section 352.1, subdivision (a). When this two-year period is added to the two-year statute of limitations for personal injury claims (§ 335.1), Foster's section 1983 claim, which relates to his August 2017 hospital visit,

was timely when it was filed in 2019.  Thus, we join in Kaweah's sur-reply brief's conclusion that the section 1983 cause of action was timely filed.

### 3.  Kaweah Is a "Person" Under Section 1983

In its respondent's brief, Kaweah conceded it is a local government entity and, thus, qualifies as a "person" that can be held liable under section 1983 for a civil rights violation.  Kaweah argued a local government entity is liable under section 1983 only when its "policy or custom … inflicts the injury" (*Monell*, *supra*, 436 U.S. at p. 694) and Foster's complaint was deficient because it did not allege any official policy or custom of Kaweah had caused his injury.  In *Perry v. County of Fresno* (2013) 215 Cal.App.4th 94, this court concluded four conditions must be satisfied to establish government liability under *Monell*:  "The plaintiff must establish that: (1) the plaintiff was deprived of a constitutional right; (2) the government entity had a policy; (3) this policy amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation."  (*Perry*, *supra*, at pp. 105–106.)

Foster's reply brief argued the failure to train was at the heart of his complaint and a failure to train can qualify as the policy or custom referred to in *Monell*.  Foster supported this argument by citing *Harris*, *supra*, 489 U.S. 378.  In that case, the United States Supreme Court stated, "we agree with the court below that a city can be liable under § 1983 for inadequate training of its employees." (*Id*. at p. 388.)  The court went on to state:  "We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of the persons with whom the police come into contact." (*Ibid*.)  The court determined a failure to provide adequate training may be said to represent a policy of local government when, "in light of the duties assigned to specific officers or employees[], the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [local

14.

government] can reasonably be said to have been deliberately indifferent to the need." (*Id*. at p. 390.)

Based on the positions taken the respondent's brief and the appellant's reply brief, our December 2020 briefing letter asked Kaweah:

> "[W]hat test or standard is used to determine whether a plaintiff has alleged sufficient facts to state a section 1983 claim against a local government entity based on a failure to train that constitutes deliberate indifference? (See *Connick v. Thompson* (2011) 563 U.S. 51, 62 [a pattern of similar constitutional violations by untrained employees that puts municipal decisionmakers on notice that a new program is necessary]; *City of Canton v. Harris*, *supra*, 489 U.S. 378, 390 ['the need for more or different training [was] so obvious']; *Shadrick v. Hopkins County* (6th Cir. 2015) 805 F.3d 724, 737 [plaintiff's 'burden under § 1983 is to prove that [the defendant entity's] failure to train and supervise its ... nurses about the legal duty to provide constitutionally adequate medical care amounted 'to deliberate indifference to the rights of persons with whom the [nurses] come into contact" ']; *Segal v. City of New York* (2d Cir. 2006) 459 F.3d 207, 219; *Long v. County of Los Angeles* (9th Cir. 2006) 442 F.3d 1178, 1186 [three-part test for establishing municipality's liability under *Monell*]; *Olsen v. Layton Hills Mall* (10th Cir. 2002) 312 F.3d 1304, 1318 [while a single incident generally will not give rise to liability, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action]. Please note that cases decided by summary judgment or trial, addressing proof, will be less useful or persuasive than cases decided at the pleading stage.)"

The briefing letter also asked Kaweah whether the allegations in Foster's complaint that referred to the failure to train adequately pleaded a claim against it for failure to train its personnel. Kaweah's sur-reply brief did not comply with our directions to provide specific answers to these questions. Instead, Kaweah bypassed these questions and stated it would answer Foster's section 1983 claim for deliberate indifference to medical needs, would "not contend that [Foster's] Deliberate Indifference claim is untimely," and would not contend the section 1983 claim "has pleading deficits arising from California's Government Claims Act."

15.

In light of Kaweah's responses to our questions and Foster's allegations that Kaweah was deliberately indifferent in failing to train the doctor who treated him, we conclude Foster adequately alleged a section 1983 cause of action based on a failure to train that can be viewed as a policy or custom of Kaweah. (See *Monell*, *supra*, 436 U.S. at p. 694 [policy or custom]; *Harris*, *supra*, 489 U.S. at p. 390 [failure to train].)

III.    STATE LAW NEGLIGENCE CLAIM

A.      <u>General Principles Governing Statutes of Limitation</u>

Statutes of limitation prescribe the length of time a plaintiff is given to bring suit or be barred. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 (*Aryeh*).) Generally, the limitations period "runs from the moment a claim accrues." (*Ibid*.; § 312 [action must be "commenced within the periods prescribed in this title, after the cause of action shall have accrued"].) California follows the " 'last element' " accrual rule, which provides the statute of limitations runs from the occurrence of the last element essential to the cause of action. (*Aryeh*, *supra*, at p. 1191.) Our Supreme Court has described the essential elements for statute of limitations purposes as " 'wrongdoing, harm, and causation.' " (*Ibid*.)

The foregoing general rules are subject to various modifications and equitable exceptions that affect the initial accrual of a cause of action, the subsequent running of the limitations period, or both. (*Aryeh*, *supra*, 55 Cal.4th at p. 1192.) These exceptions and modifications include the delayed discovery rule, equitable tolling, equitable estoppel, the continuing violation doctrine, the theory of continuous accrual, and waiver. (*Ibid*.)

In this case, Foster relies on the delayed discovery rule. That rule postpones the accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807.) Thus, the statute of limitations begins to run when the plaintiff has reason to suspect an injury

16.

and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have uncovered a factual basis for the particular cause of action. (*Id.* at p. 803.)

B. Sections 340.5 and 352.1

Section 340.5 establishes the statute of limitations in medical malpractice lawsuits. It reads in part: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person." Under the plain wording of the statute, the shorter of the two limitation periods determines whether the action is timely filed. (*Ngo v. County of Los Angeles* (1989) 207 Cal.App.3d 946, 948.) Stated another way, "[a] plaintiff in a medical malpractice action must satisfy the requirements of both the one-year and the three-year limitations periods." (*Drexler v. Petersen* (2016) 4 Cal.App.5th 1181, 1189.)

The interplay between sections 340.5 and 352.1 was addressed by our Supreme Court in *Belton v. Bowers Ambulance Service* (1999) 20 Cal.4th 928. The court concluded that the two-year tolling for prisoners as provided in section 352.1 applies to the one-year limitations period in section 340.5, but not to the three-year limitations period in that section. (*Belton, supra,* at pp. 931–935.) Accordingly, a prisoner's time to sue a healthcare provider can be extended by his or her incarceration up to, but never beyond, the maximum three-year deadline contained in section 340.5. In *Belton*, the prisoner had filed his complaint more than one year after discovery of his cause of action,

17.

but within the three-year maximum period.  Based on the tolling of section 340.5's one-year period pursuant to section 352.1, the court concluded the complaint was timely.

C.      <u>The State Law Malpractice Cause of Action Was Time Barred</u>

Foster's complaint is reasonably interpreted as alleging federal cause of action for violations of section 1983 and a state law cause of action for medical malpractice.  The medical malpractice action is the subject to the one-year and three-year limitations periods set forth in section 340.5.

1.      *No Tolling*

Foster contends his state law cause of action is timely because the limitations period was tolled for two years by section 352.1.  We disagree.  The exception in subdivision (b) of section 352.1 applies to the medical malpractice claim against Kaweah because it is a public entity and the cause of action is one "for which a claim is required to be presented in accordance with [the Government Claims Act]."  (§ 352.1, subd. (b).)  Our briefing letter gave Foster an opportunity to address whether this exception applied to his state law claim and Foster did not present a convincing argument for concluding the malpractice claim against Kaweah was not subject to the exception.  Most of his arguments focused on his life sentence being one with the possibility of parole.  Consequently, while Foster got the benefit of the two-year tolling provision for his federal claim, his state law cause of action against Kaweah does not qualify for tolling because the exception in subdivision (b) of section 352.1 prevents it.  A similar conclusion about the application of section 352.1 to federal and state law claims was reached in *Ellis v. City of San Diego*, *supra*, 176 F.3d at page 1190.  In that case, the federal civil rights claim was timely because of tolling under section 352.1 and the state law claims were untimely because the tolling provision did not apply to them.

## 2. *Commencement*

To calculate whether Foster's medical malpractice cause of action was brought within one year of discovery for purposes of section 340.5, we must identify the date the lawsuit commenced. Normally that date is when the complaint was filed, which was October 7, 2019, in this case. (See §§ 350 [action is commenced when the complaint is filed], 411.10 ["civil action is commenced by filing a complaint with the court"].)

The general rule that a lawsuit commences with the filing of the complaint does not apply to Foster because he was in prison and was representing himself. As a result, we must apply California's prison delivery rule to determine the commencement date. Under that rule, "a civil complaint by a pro se prisoner litigant should be deemed filed when it is delivered to prison authorities for forwarding to the superior court." (*Moore v. Twomey* (2004) 120 Cal.App.4th 910, 918; 43 Cal.Jur.3d (2019) Limitations of Actions § 128, pp. 219–220 [under prison mailbox rule, prisoner's complaint is deemed filed when delivered to prison authorities for forwarding to court].)

Here, the record does not show when Foster delivered his complaint to prison authorities for mailing to the superior court. For instance, there is no mail log showing the date it was received and mailed. This appeal comes to us at the pleading stage. The facts for the application of a statute of limitations at that stage must clearly and affirmatively appear on the face of the complaint and matters judicially noticed. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors*, *supra*, 48 Cal.4th at p. 42.) Applying this principle, we draw the inference most favorable to Foster when construing his complaint and assume it was delivered to prison officials immediately after Foster signed it, which he did twice. The date handwritten by each signature is September 10, 2019.

Therefore, applying California's prison delivery rule and pleading stage principles, we deem Foster's lawsuit was commenced on September 10, 2019, even though it was not filed by the superior court until the next month. Based on this commencement date

19.

and the one-year limitations period in section 340.5, Foster's medical malpractice claim will be timely if he discovered that cause of action on or after September 10, 2018.

### 3. Discovery

Foster's complaint clearly and affirmatively shows he discovered the wrongdoing, injury and causation relevant to his medical malpractice cause of action before September 2018. Paragraph 14 of Foster's complaint alleges he "wrote several letter's to defendant's to complain about his mistreatment and the unprofessional care that he was denied which On: May 25, 2018, a response was issued by … Bermudez, who sought to, apologize for the unprofessional care denied to the plaintiff .…" Consistent with this allegation, Foster's appellate briefing indicates that, sometime in February 2018, he received the December 4, 2017 x-ray report showing the extent of his injuries. As a result, Foster contends he did not discover the failure to diagnose his broken ribs and resulting injuries until February 2018.

Based on the contents of Foster's complaint and his appellate briefs, we conclude Foster discovered his medical malpractice claim sometime before May 25, 2018. This discovery occurred more than one year before the deemed commencement date of September 10, 2019. As a result, Foster's medical malpractice claim against Kaweah is barred by the one-year statute of limitations in section 340.5, which was not tolled because of the exception in subdivision (b) of section 352.1.

## DISPOSITION

The order dismissing the case with prejudice, filed February 13, 2020, is reversed. Within 10 days of the issuance of remittitur, the trial court shall vacate its "RULING ON DEFENDANT'S DEMURRER," filed January 29, 2020, and enter a new order (1) overruling the demurrer to the federal civil rights cause of action under 42 U.S.C. section 1983, (2) sustaining the demurrer to the state law medical malpractice cause of action

without leave to amend, and (3) directing Kaweah to answer the federal civil rights cause of action within 21 days of the filing of the remittitur in the superior court.

Appellant shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278.)